ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
SEP 18 2006
U.S. COURT OF FEDERAL CLAIMS

| | |
|---|---|
| TIMOTHY ESCH, PAUL ESCH, DAVID ESCH, REGINA WORTHINGTON, RAYMOND ESCH, JUDY ESCH BROWN, DONALD ESCH and L J FARMS, a Partnership, | CASE NO.: 06-658 C |
| Plaintiffs, | CLAIM |
| vs. | |
| THE UNITED STATES OF AMERICA [redacted] | |
| Defendant | |

INTRODUCTION

1. This is a claim asserted on behalf of the above referenced Plaintiffs against the United State of America acting through the captioned Defendant, Mike Johanns (and his respective predecessor(s)), Secretary of the United States Department of Agriculture (hereinafter USDA).

2. This court has jurisdiction over the subject matter of this claim by virtue of and pursuant to provisions of 28 U.S.C. §1491 as a contract claim, for liquidated damages, sounding other than in tort.

RELATED CASES

3. There are no pending related cases.

THE PARTIES

4. Plaintiffs, and all of them, are siblings and were partners in L J Farms, a Colorado partnership, conducting business in the State of Colorado in the nature of farming, ranching, and cattle raising operations. Hereinafter Plaintiffs are referred to collectively as L J Farms.

5. Defendant, Mike Johanns, is the Secretary of the united states Department of Agriculture and is the official of the USDA responsible for direction and supervision of that department. Allegations as herein set forth, against USDA, Commodity Credit Corporation (CCC) , Farmers Home Administration (FmHA), Farm Service Agency (FSA) ,and any of the divisions of the united States Department of Agriculture or branches are intended to be understood as allegations against the Defendant as well.

## STATUTORY BACKGROUND

6. On April 4, 1996, President William Clinton signed into law the Federal Agriculture Improvement and Reform Act of 1996, Pub. L. No. 104-127, 110 stat. 888 (hereinafter FAIRA). Title I of FAIRA entitled the "Agricultural Market Transition Act" (AMTA) , in part, authorized the use of binding production flexibility contracts between the united states of America and agricultural producers, such as Plaintiffs. 7 U.S.C. Sec. 201 through 218.

7. Under the terms of AMTA, eligible producers with eligible acreage were provided an opportunity to enter into a seven year production flexibility contract providing for fixed, guaranteed payments to the producer over the referenced seven year period. Pursuant to terms of AMTA, annual PFC payments were to be made no later than September 30th of each fiscal year, 1986 through 2002.

8. The Conservation Reserve Program (CRP) is a federal program established under the Food Security Act of 1985 to convert erodible crop land to vegetative cover for a period of ten years. Eligible producers with eligible acreage are paid a fixed sum of money in exchange for removing acreage from production, and stabilizing the same with cover vegetation.

9. The Federal Claim Collection Act of 1996, as amended by the Debt Collection Act of 1982, the Deficit Reduction Act of 1984, and the Debt Collection Improvement Act of 1986, authorizes the head or executive of any legislative agency, including the Defendant, the united States Department of Agriculture, the power, under certain limited circumstances, to collect a claim of the united States by administrative offset. 31 U.S.C. Sec. 3716.

10. Effective October 13, 1994, functions of FmHA were transferred to a new agency within USDA, the Consolidated Farm Service Agency (CFSA), now known as Farm Service Agency (FSA). Federal Crop Insurance Reform and Department of Agriculture Reorganization Act of 1994, Pub. L. No. 103-354, Sec.226, 108 Stat. 3728, 3214 through 3216 (USDA Reorganization Act of 1994)[7 U.S.C. Sec. 6932 (West Supp. 1986)].

## BACKGROUND OF CLAIM

11. In January of 1984, FmHA loaned approximately $835,000.00 to a partnership known as L J Farms. L J Farms was a farming operation in Baca County, Colorado then consisting of two partners, Patrick J. Esch and Dennis L. Esch. As evidence of the indebtedness, Patrick and Dennis Esch executed three Promissory Notes to FmHA on behalf of the partnership. The two partners, along with their spouses, Arlene and Kathleen Esch, further executed Promissory Notes as individuals.

12. As security for the above referenced indebtedness, Patrick and Dennis Esch, as L J Farms, executed a real estate Deed of Trust conveying a security interest in favor of the United States of America in and to real property located in Baca County, Colorado.

13. On September 4, 1984, Dennis and Patrick Esch conveyed all their right, title and interest in and to the assets of L J Farms including, but not limited to, real estate, equipment, materials and supplies to all of the Plaintiffs. This transfer resulted in a new partnership which thereafter operated the farming operation and was called L J Farms Partnership.

14. In April of 1986, the Defendant, through CCC, accepted a bid submitted by Plaintiffs for participation in the Conservation Reserve Program. A written contract was executed and entered into by and between the Defendant and the nine partners of L J Farms Partnership which obligated the partnership to remove 12,000 acres from production.

15. Crops which had been planted on a portion of the property were destroyed and cover vegetation was planted.

a. The growing crop would have reasonably yielded 35 bushels per acre.

b. At the time the crop was destroyed, wheat was worth approximately $3.50 per bushel.

c. The total wheat crop which was destroyed is reasonably valued at $796,250.00.

d. The cost to the partnership of the destruction of the growing crop and plant cover vegetation was approximately $125,000.00.

16. In August of 1986, Defendant's Office of Inspector General conducted an audit of the Baca County ASCS office. As a consequence of said audit, L J Farms Partnership did not receive CRP or price support program payments in 1986 or thereafter. L J Farms was advised by the Defendant that the $628,000.00 payment due them was suspended pending completion of the audit.

17. L J Farms was finally forced to initiate a civil action against the United states of America styled as Esch v. Lyng, 665 F. Supp. 6 (D. D.C. 1987). On July 21, 1987, the District Court for the District of Columbia reversed the decision of the Defendant and found that ASCS had acted arbitrarily, capriciously, without substantial evidence and in the absence of due process in acting as alleged in Paragraph 18 and in reaching a decision to deny Plaintiffs relief for the year 1987 as a nine person farm operation for payment limitation purposes in the Defendant's farm programs (CRP programs) .Esch, 665 F. Supp. at 23. The court remanded the case to the Secretary of the USDA for determination as to the "person" status (number of partners) of L J Farms Partnership eligible for payment(s) in Defendant's farm programs after 1987. The Defendant failed to comply with or abide the District Court's Order in a timely manner and as a consequence, L J Farms Partnership was forced to initiate Chapter 11 bankruptcy proceedings on October 14, 1987.

18. On August 28, 1990, the Plaintiffs entered into a written Settlement Agreement with the Defendant USDA to settle the remanded matter. The Commodity Credit Corporation, in order to fully and completely resolve all claims between the parties relating to or arising out of the controversy concerning L J Farms Partnership partners' entitlement to participate in and receive payments under federal farm programs for crop years 1984 to 1989. Pursuant to the Settlement Agreement, a true and accurate copy of which is marked as Exhibit "A", attached hereto and incorporated herein by this reference, Defendant, to purchase its peace and resolve its liabilities to Plaintiffs, transferred the sum of $1,087,819.40 to the escrow account of the attorneys for L J Farms Partnership.

19. In April of 1990, pursuant to Colorado law, the Plaintiffs and their spouses formed a new partnership, Horsecreek Farms, which purchased the lands which had been previously subjected

to a security interest in favor of the united States of America and commenced farming operations thereupon.

20. Since 1991, Plaintiffs and their spouses have continued their farming operation in Baca County, Colorado through Horsecreek Farms.

21. In 1996, Plaintiffs, Patrick and Dennis Esch, sold their partnership interest in Horsecreek Farms to the remaining partners, who are the Plaintiffs in these proceedings.

22. Dennis and Patrick Esch have settled and released their claims against the Defendants.

23. In 1996, Plaintiffs, as Horsecreek Farms Partnership, were eligible producers with eligible acreage under AMTA and were eligible to enter into a PFC with Defendant.

24. On July 10, 1996, Plaintiffs did enroll eligible acreage in the PFC program. Enrolling in PFC resulted in Plaintiffs being eligible to participate in the Loan Deficiency Payment Program.

25. During the first week of September, 1996, Defendant began making payments under PFCs for the 1996 fiscal year.

26. Plaintiffs did not receive payments of the guaranteed amount in accordance with the terms and conditions of the PFC entered into with the Defendant.

27. On September 20, 1996, FSA mailed a letter to Plaintiffs advising that it had determined to offset payments that were due Plaintiffs because of alleged conversion of security property. The alleged "security property" consists of the proceeds of the settlement entered into by and between Plaintiffs' and Defendant in August of 1990.

28. Copy of the letter mailed by FSA is attached hereto, marked as Exhibit "B", and incorporated herein by this reference.

29. The Settlement Agreement entered into by and between the parties (Exhibit "A") provides inter alia as follows: A. This agreement is intended as, and is, a full resolution of that controversy for those programs for all crop years 1984 through 1989 and all claims between the parties for those crop, years concerning the USDA Annual Commodity Support Programs and the CRP.

30. By operation of the Settlement Agreement Plaintiffs are entitled to assert claims to enforce terms of the Agreement.

31. Notwithstanding the clear and obvious intent of the referenced Settlement Agreement, the Defendant asserted liability against Plaintiffs for crop years 1984 through 1989, in breach of said agreement, as specified in the September 20, 1996 notice.

32. By operation of law, Plaintiffs are entitled to assert direct claims arising out of the material breach of the Agreement.

33. Pursuant to the Notice of Offset first issued on September 20, 1996, the Defendant offset payments due Plaintiffs, in the total sum of $843,293.30.

34. The Defendant's actions as hereinabove referenced deprived the Plaintiffs, and each of them, of the benefits of the Settlement Agreement entered into on August 28, 1990, are contrary to the terms of said agreement and constitute a breach thereof.

35. At or about the time that the Settlement Agreement was entered into, litigation was pending between Plaintiffs and Defendant wherein Plaintiffs' reasonable expectancy of recovery was in the approximate amount of $6.8 Million.

36. These damages which consisted of accrued claims for past due CRP payments, costs of planting cover crop, destroying growing crop, and the lost value thereof, as well as the right to future payments under CRP of approximately $350,000.00 annually.

37. All claims for damages as above specified were compromised in exchange for a payment of the sum of money hereinabove referenced and as set forth on Exhibit "A".

38. The Defendant's actions as hereinabove described, in breach and contravention of the parties' express agreement (Exhibit "A"), are in bad faith and have resulted in the loss of the benefit of the terms of the agreement and caused direct damages to the claimants for which they are entitled to recovery.

WHEREFORE, Plaintiffs pray Judgment as follows:

1. For recovery against the Defendant in the amount of $843,293.30, representing sums of money offset against Horsecreek Farms farm program payments as first initiated pursuant to the terms of Exhibit "B" to which Plaintiffs are entitled by operation of the Settlement Agreement;

2. For the sum of $125,000.00, representing the costs associated with destroying growing crop and planting cover crop upon CRP program lands;

3. For the sum of $796,250.00, representing the reasonable value of the Plaintiffs' destroyed wheat crop.

4. For the sum of $1.2 Million, representing past due and accrued CRP payments which were compromised in reliance upon execution and performance of Exhibit "A";

5. For an award of $3.15 Million, representing contracted CRP payments due Plaintiffs which were suspended, vacated and nullified based upon and in reliance upon execution and full and faithful performance by the Defendant under the terms of Exhibit "A"; and

6. For a reasonable award of interest, attorney's fees and costs of this action pursuant to law.

Dated this 15th day of September, 2006.

TIMOTHY ESCH, PAUL ESCH, DAVID ESCH, REGINA WORTHINGTON, RAYMOND ESCH, JUDITH ESCH BROWN, DONALD ESCH and L J FARMS, a Partnership, Plaintiffs,

By: ______________________________

K.C. Engdahl, Nebraska Bar No. 17678
Ballew Schneider Covalt
Gaines & Engdahl, PC LLO
1625 Farnam Street, Suite 300
Omaha, Nebraska 68102
Telephone: (402) 934-9499
Facsimile: (402) 934-7730
kc@bsclawfirm.com
Attorneys for Plaintiffs

EXHIBIT
A

Agreement

PAYMENT LIMITATIONS - 1984-89 CROPS - - ESCHS

This agreement is between the Commodity Credit Corporation (CCC) of the United States Department of Agriculture (USDA), the following nine brothers and sisters (hereafter "the Eschs"): (1) Patrick Esch; (2) Dennis Esch; (3) Timothy Esch; (4) Paul Esch; (5) David Esch; (6) Regina Worthington; (7) Raymond Esch; (8) Judy Esch; and (9) Donald Esch, and LJ Farms, a partnership composed of the Eschs (hereafter "LJ Farms").

The Eschs, LJ Farms and the CCC have been engaged in a dispute concerning the application of the payment limitation concerning annual commodity support benefits from USDA and concerning the Conservation Reserve Program (CRP). There have been numerous administrative appeals regarding these matters and others are pending. Also, there has been a lawsuit, styled Esch, et al. v. Lyng, U.S.D.C. D.C. C.A. No. 87-0885.

This agreement is intended as, and is, a full resolution of that controversy for those programs for all crop years 1984-89 and all claims between the parties for those crop years concerning the USDA annual commodity support programs and the CRP.

PLAINTIFF'S EXHIBIT A

1/12

It is agreed that as a full resolution of all such claims by and between the parties for those crop years that:

1. PROMPT PAYMENT. All amounts to be paid hereunder shall be paid promptly, but without interest, and in any event no later than 30 days from the date of execution of this agreement.

2. PAYMENTS. For the 1984 crop year, the Esch's shall be paid the sum of $100,000, for annual support program operations on the farming operations of LJ Farms in the State of Colorado plus up to the additional sum of $50,000 for annual commodity support program operations by Timothy Esch in the State of Nebraska. Timothy Esch was entitled to receive the sum of $18, 887.75 from such program payments for crop year 1984, making the total entitlement under this settlement to be $118,887.75. The sum of $18,887.75 was originally issued to Timothy Esch by the State of Nebraska in 1984. However, the amount was collected back from the CRP payments subsequently due but later reissued to each of the nine principals to this agreement in the amount of $2,098.64 each. The additional sum of $49,999.28 was previously paid. The balance due the Eschs for crop year 1984 hereunder is $50,000.72. This sum represents the balance of all sums due the Eschs from the subject programs for their operations for that crop year. The sum of $49,999.28 has been previously

2/12 "A"

paid. The balance due the Eschs for crop year 1984 hereunder is $68,888.47. This sum represents the balance of all sums due the Eschs and LJ Farms from the subject programs for their operations for that crop year.

3. PAYMENTS PAID FOR CROP YEARS 1985 and 1986. All payments due the E[illegible]hs and LJ Farms pursuant to annual commodity support benefits and the Conservation Reserve Program for 1985 and 1986 have been paid. No additional sums are due and payable pursuant to either of said programs for crop years 1985 and 1986.

4. CRP CONTRACTS. The Eschs executed CRP contract No. 8, concerning farm No. 3048 on March 14, 1986, which contract was executed by CCC April 10, 1986, covering 12,367.4 acres of land for the period from October 1, 1986 through September 30, 1995, at the annual per-acre rate of $34.99. This contract was reduced on July 23, 1986 by 35.1 acres leaving a total of 12,332.3 acres for a total annual contract CRP payment of $431,507.00. Subsequently, on August 13, 1986, the Eschs executed CRP contract No. 605 covering 498.5 acres of farm No. 3048, which contract was executed by the CCC October 8, 1986, for a period of ten years with dates as above specified at the annual per-acre rate of $37.11. On August 30, 1989, 31.3 acres were removed from this contract leaving a total of 467.2 acres for a total annual contract

3/12 "A"

consideration of $17,338.00. The total to which the Eschs could be entitled to per year pursuant to both CRP contracts and the payment limitation regulations equals $448,845.

5. <u>1987 CRP CONTRACTS - PAYMENTS</u>. For the 1987 crop year, the Eschs shall receive the additional sum of $398,845 pursuant to the CRP contracts above set forth, the sum of $50,000 having been previously paid. In addition, for the 1987 crop year, the Eschs shall receive all sums earned for the annual commodity support programs, less the sum of $13,352.53 previously paid. For the 1987 crop year, Tim Esch received the sum of $36,647.47 for his operations in Boone and Greeley Counties, Nebraska. For 1987, the Eschs are entitled to receive, less the amount of $13,352.53 previously paid, the sum of $225,811.80 pursuant to the corn deficiency program and the sum of $105,613.41 pursuant to the corn and grain sorghum diversion programs. Thus, for crop year 1987 pursuant to these deficiency and diversion programs the Eschs shall be paid the additional sum of $318,072.68 (225,811.80 + 105,613.41 - 13,352.53 = 318,072.68). In addition, they shall retain all payments earned by their respective operations not subject to the payment limitation provisions.

6. <u>1988 CRP CONTRACTS - PAYMENTS</u>. For the 1988 crop year, the Eschs shall receive the additional sum of $100,000 pursuant to the CRP contracts above set forth, the sum of

TE WA

4/12 "A"

$50,000 having been previously paid. In addition, regarding annual programs subject to payment limitations for the 1988 crop year, they shall receive the sum of $100,000, less the sum of $29,099 previously paid leaving a balance of $70,901 due pursuant to this settlement agreement for the Colorado operation. Timothy Esch has previously received the sum of $20,901 for his operation in Boone and Greeley Counties, Nebraska, which he shall retain. In addition thereto, all payments for 1988 not subject to the payment limitation, including the final corn deficiency payment not subject to the limitation shall be retained or paid as applicable.

7. COMMODITY SUPPORT PROGRAMS. For the 1989 crop year, the Eschs shall receive all sums due pursuant to deficiency and diversion annual commodity support programs up to the total sum of $450,000. The sum of $125,800 has been previously paid as advances under said programs and any additional sums which are or become due shall be forthwith paid or paid when due. In addition, they shall be paid the sum of $150,000 pursuant to the CRP contracts for the 1989 crop year. If the advance payments issued result in an overpayment, the Eschs' agree to refund the amount of the overpayments based on final deficiency payment determinations.

8. PAYMENTS RECEIVED AND/OR DUE. The above specified payments represent all of the payments which may be due or received by the Eschs pursuant to the subject programs for the crop years above specified, except payments, if any, not subject to the limitation due but unpaid and except for any subsequent payments due, whether subject to limit or not, from the 1989 annual commodity support program. Said payments shall be in addition to all previous payments received by them or LJ Farms henceforth.

9. RECEIPT ACKNOWLEDGEMENT. The total amount due $1,087,818.68, as indicated herein, shall be paid by CCC promptly upon the execution of this agreement and shall be paid to the attorney for the Eschs, namely, William C. Bridgforth, whose address is P. O. Box 8509, Pine Bluff, Arkansas 71611, who shall acknowledge receipt for the Eschs. Those final corn deficiency payments, if any, which are due but not subject to a limitation for crop year 1988 and the balance due, if any, from the 1989 annual commodity support programs shall be paid when paid to other producers.

10. PHRASES. The phrase "Colorado Farm" as used in this agreement shall mean all farms in the State of Colorado in which any of the Eschs have an interest.

11. COVER CROP COST. No cover crop cost - share payments shall be made by CCC unless made prior to this

6/12 "A"

agreement. However, payments previously made of a cover crop cost - share shall be retained by the Eschs and LJ Farms, and shall not count against any amounts which the Eschs and LJ Farms may receive pursuant to this agreement.

12. CANCELLATION OF CRP CONTRACTS. The CRP contracts for the Colorado Farm described above shall be considered terminated. No further payments shall be received under the contracts. The contracts shall be of no further effect and may not be succeeded to by any person.

13. ENROLLMENT IN CRP - COLORADO LAND. Land in the Colorado farm shall not be eligible to be reentered into the CRP by the Eshs, LJ Farms, or anyone acting by, through or for them prior to January 1, 1993 and then only if by statutory amendment there is a general extension of the program to allow general enrollment as of that time and only if, as of the time of the application for enrollment, the land and the person applying for participation meet all eligibility criteria for the program. It is understood that U.S.D.A. may and expects to treat the land as ineligible for enrollment by anyone in the CRP through 1992. So long as the current policy of ASCS regarding re-enrollment of land previously removed from the CRP remains in effect, the Eshs shall not re-enroll the land now known as farm #3048 which is the subject of this agreement in the CRP.

7/12 "A"

14. RESOLUTION OF CLAIMS. This agreement resolves all claims, including costs and fees, for 1984-89 between the parties for annual commodity support programs and the CRP.

15. PHRASES - ASCS AND CCC. "Annual commodity support programs" and similar phrases mean for purposes of the agreement the commodity support programs generated by ASCS and CCC pursuant to provisions of the Agricultural Adjustment Act of 1938 and the Agricultural Act of 1949, for wheat, corn or other crops.

16. PLANTING HISTORY. All crop land bases, quotas and alotment history on the farm previously reduced during the period of the contract shall be fully reinstated. All such acres shall be deemed "planted or considered planted" for such previous years as is necessary to insure no reduction in said crop land base, quotas or alotments for the ensuing crop year, and the bases for the 1990 program will be: wheat - 9,538.6 acres, sorghum - 2,330.4 acres, corn - 3,590.5 acres and barley - 1,120.1 acres.

17. DETERMINATIONS. It is understood that this agreement does not affect determinations for the 1990 crop year or subsequent crop years, except as herein indicated.

18. EFFECTIVE DATE. This agreement shall be effective only when signed by all Eschs, LJ Farms by a general partner, and for the CCC, and when the attorneys for all parties have

8/12 "A"

initialed each page, including any exhibits or appendices hereto.

19. FUTURE LAND INVOLVEMENT. Any activities related to the CRP for other land in which the Eschs may become involved in the future shall be reported first to the Deputy Administrator for State and County Operations (DASCO), ASCS, Washington, D.C., before any of the Eschs participate in the program. The Eschs may participate only with specific approval of DASCO. Except as provided for herein, however, DASCO shall not apply stricter standards to any such application but shall treat an application from the Eschs in the same manner as all other applications.

20. INTEREST AND/OR FEES. No interest or fees including but not limited to attorney fees, shall be paid by CCC from any sums to be paid under this agreement or with respect to any claims of the Eschs with respect to the matters in dispute for the subject programs, but shall all be paid in full to the Eschs as herein provided and the Eschs agree to indemnify and hold CCC forever harmless from any fees, including attorney fees, claimed by any attorney representing them or LJ Farms, and shall not institute or allow to be instituted in their or its name any action for fees under the Equal Access to Justice Provisions of 28 U.S.C. 2411 or any similar law.

WCH
JE

9/12 "A"

21. DISMISSAL OF CLAIMS. All lawsuits involving claims by the Eschs in this matter shall be dismissed with prejudice and the Eschs shall be responsible to insure they are so dismissed.

22. REMAND. It is agreed that this agreement resolves the remand in this matter entered in the court case as a result of an order of the United States Court of Appeals for the District of Columbia Circuit.

23. COUNSEL EXECUTION. Counsel for all parties shall also execute this agreement and by so doing shall represent to the other that their clients, individually and personally, have executed this agreement.

24. Claims Set-Off. The Eschs, LJ Farms and CCC waive any claim of any kind regarding crop years 1984 through and including 1989, as they may otherwise possess against each other, except as may regard the enforcement of this agreement.

25. Counterparts. This agreement may be executed in one or more counterparts all of which shall collectively be and constitute the agreement of the parties as effectively as though all of the parties had executed a single copy hereof.

IN WITNESS WHEREOF, the parties have executed this agreement this 30th day of ~~March~~ August, 1990.

10/12 "A"

LJ Farms

By /s/ LJ Family Patrick Esch
LJ Partner

/s/ James Loftin
Witness

/s/ Patrick Esch
Patrick Esch

/s/ James Loftin
Witness

/s/ Dennis Esch
Dennis Esch

/s/ James Loftin
Witness

/s/ Timothy J. Esch
Timothy Esch

/s/ James Loftin
Witness

/s/ Paul T. Esch
Paul Esch

/s/ James Loftin
Witness

/s/ David Esch
David Esch

/s/ James Loftin
Witness

/s/ Regina Worthington
Regina Worthington

/s/ James Loftin
Witness

/s/ Raymond Esch
Raymond Esch

/s/ James Loftin
Witness

/s/ Judy Esch Brown
Judy Esch Brown

/s/ James Loftin
Witness

/s/ Donald Esch
Donald Esch

/s/ James Loftin
Witness

Approved:

Office of the General Counsel
for the CCC

By /s/ Terrence C. Erickson

For CCC:

/s/ Keith D. Bjerke
Keith Bjerke
Executive Vice President
Commodity Credit Corporation

RAMSAY, COX, BRIDGFORTH, GILBERT,
HARRELSON & STARLING, attorneys
for the Eschs and LJ Farms

By /s/ William C. Bridgforth

11/12 "A"

Agreement of Counsel

It is understood that:

(i). the proper figure for the amounts owed in the agreement concerning the Esch of the 1984-89 crop years for the amount due for 1984 under the agreement is $50,000.72 and not the $68,000 figure;

(ii) that $225,000 and $105,000 figures for earned deficiency payments set out in paragraph 5 are for the Colorado farm and do not include figures for Tim Esch's farm;

(iii) that counsel for the Eschs will hold the amount of current claims for attorney fees from previous counsel for the Eschs in escrow until the resolution of that matter in the current litigation now pending in the United States District court for the District of Columbia and that any sums which by court order the government is required to place in the court's registry shall be considered money paid to the Eschs under the agreement; and.

(iv) that CCC is not required under the terms of the agreement to pay interest or fees.

William C. Bridgforth 8/28/90
William C. Bridgforth

Terrence G. Jackson 8/28/90
Terrence G. Jackson

12/12 "A"

United States Department of Agriculture

Farm Service Agency

655 Parfet Street, Suite E-305
Lakewood, Colorado 80215
(303) 236-2868 (office)
(303) 236-2879 (FAX)

September 20, 1996

Raymond Esch
19592 WCR 29
Platteville, CO 80651

COPY

RE: Offset of Horse Creek Farms Program Payments

Dear Mr. Esch:

We have recently reviewed Horse Creek Farms application for enrollment in the Production Flexibility program. Based upon a recent opinion issued by the Office of General Counsel, USDA, we have just learned that the Farm Service Agency, (FSA), has a right to offset the payments you have coming to you.

FSA will offset your payments because of a conversion of security claim. The claim results from conversion of security property arising from the $1,068,931.65 of payment you received from the settlement agreement with the Commodity Credit Corporation, USDA dated August 30, 1990. These payments were for annual commodity support and Conservation Reserve Program payments for years (1984 through 1989) relating to real estate that Farmers Home Administration, FmHA, now known as the FSA, had a valid lien on. FmHA's Deed of Trust signed by Dennis and Kathleen Esch and Patrick and Arlene Esch dated July 10, 1984 contains the following clause, "Borrower does hereby grant, bargain, sell and assign...(legal description) together with all rights, interest, easements, hereditament and appurtenances thereunto belonging, the rents, issues and profits thereof and revenues and income therefrom..."

If you have any questions concerning the decision or the facts used in making our decision and desire further explanation, you may call or write the State Office at 303-236-2868, extension 251 to request a meeting with this office within 15 calendar days of the date of this letter. You should present any new information or evidence along with possible alternatives for our consideration. You may also bring a representative or legal counsel with you. You also have the right to appeal this decision to a hearing officer in lieu of, or in addition to, a meeting with this office. See attachment for your appeal rights

You may wish to consider mediation, or other forms of alternative dispute resolution (ADR), of the issues raised by this decision. Informal mediation or ADR may enable us to narrow and resolve these issues by agreement. If you request mediation or ADR, and resources are available, FSA will participate in the mediation or ADR process. To request mediation or ADR, notify the SED by writing to: Robert Eisenach, 655 Parfet, Suite E-305, Lakewood, CO 80215, phone 303-236-2866.

Farm Service Agency is an Equal Opportunity Lender.
Complaints of discrimination should be sent to:
Secretary of Agriculture, Washington, D.C. 20250

PLAINTIFF'S EXHIBIT 6

000238 1/2 "B"

The written notice must be postmarked or faxed by you not later than 18 calendar days after the date of this letter. The SED will tell you the extent to which resources are available for mediation or ADR, and the procedures and other information concerning mediation or ADR. Mediation and ADR do not take the place of or limit your right to pursue further appeal to National Appeals Division.

If you do not wish to have a meeting as provides above, and wish to appeal, a request for a hearing must be sent to the Larry Jordan, Area Supervisor, National Appeals Division, Suite 386, 730 Simms, Golden, Colorado 80401, postmarked no later than 30 days from the date of this letter.

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, handicap, or age (provided that the applicant has the capacity to enter into a binding contract), because all or part of the applicant's income derives from any public assistance program, or because the applicant has in good faith exercised any right under the Consumer Credit Act. The Federal Agency that administers compliance with the law concerning this creditor is the Federal Trade Commission, Equal Opportunity, Washington, D.C. 20580.

Sincerely,

Robert L. Eisenach

ROBERT L. EISENACH
State Executive Director

cc: Dennis Haughian, Credit Manager, Springfield
Alex Lucero, District Director, Pueblo
William Bridgeforth, Attorney, Pine Bluff, Arkansas

2/2 B

000239