IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TIMOTHY ESCH, PAUL ESCH, DAVID ESCH, REGINA WORTHINGTON, RAYMOND ESCH, JUDY ESCH BROWN, DONALD ESCH and L J FARMS, a Partnership, | ) | CASE NO.: 06-658 |
| Plaintiffs, | ) | Hon. Judge Susan Braden |
| vs. | ) | |
| UNITED STATES | ) | **APPENDIX** |
| Defendant. | ) | |

TABLE OF CONTENTS TO APPENDIX


| Exhibit No. | Exhibit Description | Page |
|---|---|---|
| A | Affidavit of K.C. Engdahl | 1 |
| A1 | Notes | 4 |
| A2 | Deed of Trust | 14 |
| A3 | Bankruptcy Filings | 21 |
| A4 | Order of Relief from Automatic Stay | 24 |
| A5 | Order Approving Settlement | 27 |
| A6 | Certificate of Purchase | 34 |
| A7 | Affidavit of Patrick Esch | 37 |
| A8 | Memorandum and Order dated July 16, 2004 | 48 |
| A9 | Dismissal Agreement | 58 |
| A10 | Stipulated Settlement | 61 |

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| TIMOTHY ESCH, PAUL ESCH, DAVID ESCH, REGINA WORTHINGTON, RAYMOND ESCH, JUDY ESCH BROWN, DONALD ESCH and L J FARMS, a Partnership, | CASE NO.: 06-658 |
| Plaintiffs, | Hon. Judge Susan Braden |
| vs. | |
| UNITED STATES | |
| Defendant. | |

AFFIDAVIT OF K.C. ENGDAHL

STATE OF NEBRASKA )
)ss
COUNTY OF DOUGLAS )

I, K.C. Engdahl, being first duly sworn, states and deposes as follows:

1. I am counsel for Plaintiffs in the above-captioned matter and I am admitted to practice in this Court.

2. I am at least 21 years of age.

3. As to procedural matters herein set forth, I have direct knowledge and where applicable, I am a custodian of documents produced herewith in opposition to the Defendant's Motion to Dismiss.

4. I have represented parties in separate proceedings bearing upon issues now presented to this Court.

5. I attest that the documents produced are true and accurate reproductions of materials of record in proceedings hereafter identified.

Exhibit A

1/85

6. Attached hereto as Exhibit 1, consisting of nine (9) pages, is a reproduction of notes attached as exhibits to Plaintiffs' Complaint in the matter styled as United States of America et al. v. Patrick J. Esch, Arlene K. Esch, Dennis L. Esch and Kathleen H.Esch, Case No. 98-M-2762 in the District Court for the District of Colorado. The referenced matter has been concluded by a Stipulated Settlement Agreement executed in August 2006.

7. Exhibit 2, attached hereto and consisting of six (6) pages, is drawn from and is a part of the administrative record of proceedings in National Appeals Division (NAD) appeal, Log No. 97-000063W.

8. Exhibit 3, attached hereto and consisting of two (2) pages, is drawn from and is a part of the administrative record of proceedings in National Appeals Division (NAD) appeal, Log No. 97-000063W. Exhibit 3 is also a reproduction of records of bankruptcy proceedings of L.J. Farms Partnership filed in the Bankruptcy Court of the District of Colorado, BK No. 87B-12287M.

9. Exhibit 4, attached hereto and consisting of two (2) pages, is drawn from and is a part of the administrative record of proceedings in National Appeals Division (NAD) appeal, Log No. 97-000063W. Exhibit 4 is also a reproduction of records of bankruptcy proceedings of L.J. Farms Partnership filed in the Bankruptcy Court of the District of Colorado, BK No. 87B-12287M.

10. Exhibit 5, attached hereto and consisting of six (6) pages, is drawn from and is a part of the administrative record of proceedings in National Appeals Division (NAD) appeal, Log No. 97-000063W. Exhibit 5 is also a reproduction of records of bankruptcy proceedings of L.J. Farms Partnership filed in the Bankruptcy Court of the District of Colorado, BK No. 87B-12287M.

11. Exhibit 6, attached hereto and consisting of two (2) pages, is drawn from and is a part of the administrative record of proceedings in National Appeals Division (NAD) appeal, Log No. 97-000063W, and is filed of record with the Baca County Register of Deeds.

12. Exhibit 7, attached hereto and consisting of ten (10) pages, attachments not included, is the Affidavit of Patrick Esch made in support of Plaintiff's Motion for Summary Judgment in the matter of David Esch, et al. v. Dan Glickman in the District Court for the District of Colorado, Case No. 99-M01896.

13. I served as counsel in the matter styled as David Esch et al. v. Ann Veneman in the District Court for the District of Colorado, Case No. 00-M-957, which was determined by Order of Court dated July 16, 2004, which is attached hereto as Exhibit 8, consisting of nine (9) pages. Appeal of the Order was dismissed on July 14, 2005 by agreement of the parties pursuant to Exhibit 9, attached hereto, consisting of two (2) pages.

14. The Stipulated Settlement Agreement referenced in Paragraph 6, herein, is attached hereto as Exhibit ten (10), consisting of twenty-four (24) pages.

FURTHER AFFIANT SAYETH NAUGHT.

K.C. Engdahl, Affiant

SUBSCRIBED AND SWORN to before me this 7 day of May, 2007.

GENERAL NOTARY - State of Nebraska
KARISA D. JOHNSON
My Comm. Exp. May 26, 2010

Notary Public

# EXHIBIT #1

USDA-FmHA
Form FmHA 1940-17
(Rev. 6-16-81)

# PROMISSORY NOTE

| | |
|---|---|
| Name L. J. Farms | |
| State Colorado | County Baca |
| Case No. 05-05-1340346 | Date July 10, 1984 |
| Fund Code 43 | Loan No. 01 |

KIND OF LOAN

Type: EM

Pursuant to:
☒ Consolidated Farm & Rural Development Act
☐ Emergency Agricultural Credit Adjustment Act of 1978

ACTION REQUIRING NOTE
☒ Initial loan
☐ Subsequent loan
☐ Consolidation & subsequent loan
☐ Consolidation
☐ Rescheduling
☐ Reamortization
☐ Credit sale
☐ Deferred payments

FOR VALUE RECEIVED, the undersigned Borrower(s) and any comakers jointly and severally promise to pay to the order of the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, (herein called the "Government"), or its assigns, at its office in Springfield, CO ______, or at such other place as the Government may hereafter designate in writing, the principal sum of FIVE HUNDRED THOUSAND AND NO/100---------- dollars ($ 500,000.00), plus interest on the unpaid principal balance at the RATE of FIVE percent (5%) per annum. If this note is for a Limited Resource loan (indicated in the "Kind of Loan" box above) the Government may CHANGE THE RATE OF INTEREST, in accordance with regulations of the Farmers Home Administration, not more often than quarterly, by giving the Borrower thirty (30) days prior written notice by mail to the Borrower's last known address. The new interest rate shall not exceed the highest rate established in regulations of the Farmers Home Administration for the type of loan indicated above.

Principal and interest shall be paid in 21 installments as indicated below, except as modified by a different rate of interest, on or before the following dates:

$ 40,125.00 on January 1, 1985; $ N/A on January 1, 19__;
$ N/A on January 1, 19__; $ N/A on January 1, 19__;
$ N/A on January 1, 19__; $ N/A on January 1, 19__;
$ N/A on January 1, 19__; $ N/A on January 1, 19__;
$ N/A on January 1, 19__; $ N/A on January 1, 19__;
$ N/A on January 1, 19__; $ N/A on January 1, 19__;
and $ 40,125.00 thereafter on January 1st of each year until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable 20 years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval by the Government will be given provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown in the Record of Advances at the end of this note. Borrower authorizes the Government to enter the amount(s) and date(s) of such advance(s) in the Records of Advances.

For each rescheduled, reamortized or consolidated note, interest accrued to the date of this instrument shall be added to principal and such new principal shall accrue interest at the rate evidenced by this instrument.

Every payment made on any indebtedness evidenced by this note shall be applied first to interest accrued as of the date of receipt of the payment and then to principal.

Exhibit A "1"

1/9

GOVERNMENT EXHIBIT A



5/85

Prepayments of scheduled installments, or any portion thereof, may be made at any time at the option of the Borrower. Refunds and extra payments, as defined in the regulations (7 CFR §1951.8) of the Farmers Home Administration according to the source of funds involved, shall, after payment of interest, to be applied to the last installment to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled herein.

If the Government at any time assigns this note and insures the payment thereof, Borrower shall continue to make payments to the Government as collection agent for the holder. While this note is held by an insured holder, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on an installment due date basis. The effective date of every payment made by Borrower, except payments retained and remitted by the Government on an installment due date basis, shall be the date of the United States Treasury check by which the Government remits the payment to the holder. The effective date of any prepayment retained and remitted by the Government to the holder on an installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between such date and the date of the Treasury check to the holder.

Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced hereby, at the option of the Government shall become a part of and bear interest at the same rate as the prinicpal of the debt evidenced hereby and be immediately due and payable by Borrower to the Government without demand.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced hereby shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, Borrower will operate such property as a farm if this is a Farm Ownership loan.

If "Consolidation and subsequent loan," "Consolidation," "Rescheduling," or "Reamortization" is indicated in the "Action Requiring Note" block above, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of the unpaid principal and interest on the following described note(s) or assumption agreement(s) (new terms):

| FACE AMOUNT | INT. RATE | DATE | ORIGINAL BORROWER | LAST INSTALL. DUE |
|---|---|---|---|---|
| $ | % | , 19 | | , 19 |
| $ | % | , 19 | | , 19 |
| $ | % | , 19 | | , 19 |
| $ | % | , 19 | | , 19 |
| $ | % | , 19 | | , 19 |
| $ | % | , 19 | | , 19 |
| $ | % | , 19 | | , 19 |

Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidating, rescheduling or reamortizing. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

REFINANCING (GRADUATION) AGREEMENT: If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, at the Government's request, apply for and accept a loan(s) in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock.

DEFAULT: Failure to pay when due any debt evidenced hereby or perform any covenant of agreement hereunder shall constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default hereunder. UPON ANY SUCH DEFAULT, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act, or the Emergency Agricultural Credit Adjustment Act of 1978 and for the type of loan as indicated in the "Kind of Loan" block above. This Note shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions hereof.

1: 2/9

6/85

Presentment, protest, and [illegible] are hereby waived.

(SEAL) L. J. Farms (Borrower)

(SEAL) (Borrower)

"AS PARTNERS"

Patrick J. Esch

Dennis L. Esch

"AS INDIVIDUALS"

Patrick J. Esch

Arlene K. Esch

Dennis L. Esch

Kathleen H. Esch

By: Dennis L. Esch, Attorney in Fact

Box 17

Two Buttes, CO 81084

RECORD OF ADVANCES

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|---|---|---|---|---|---|
| $ 500,000 | 7-10-84 | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| | | | TOTAL | $ 500,000 | |

1: 3/9

7/85

USDA-FmHA
Form FmHA 1940-17
(Rev. 6-16-81)

# PROMISSORY NOTE

| | | |
|---|---|---|
| Name L. J. Farms | | KIND OF LOAN<br>Type: EM<br>Pursuant to:<br>☒ Consolidated Farm & Rural Development Act<br>☐ Emergency Agricultural Credit Adjustment Act of 1978 |
| State Colorado | County Baca | ACTION REQUIRING NOTE<br>☐ Initial loan ☐ Rescheduling<br>☒ Subsequent loan ☐ Reamortization<br>☐ Consolidation & subsequent loan ☐ Credit sale<br>☐ Deferred payments<br>☐ Consolidation |
| Case No. 05-05-1340346 | Date July 10, 1984 | |
| Fund Code 43 | Loan No. 03 | |

FOR VALUE RECEIVED, the undersigned Borrower(s) and any comakers jointly and severally promise to pay to the order of the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, (herein called the "Government"), or its assigns, at its office in Springfield, CO ________, or at such other place as the Government may hereafter designate in writing, the principal sum of TWO HUNDRED THIRTY-FIVE THOUSAND THIRTY AND NO/100---------- dollars ($ 235,030.00), plus interest on the unpaid principal balance at the RATE of EIGHT percent ( 8 %) per annum. If this note is for a Limited Resource loan (indicated in the "Kind of Loan" box above) the Government may CHANGE THE RATE OF INTEREST, in accordance with regulations of the Farmers Home Administration, not more often than quarterly, by giving the Borrower thirty (30) days prior written notice by mail to the Borrower's last known address. The new interest rate shall not exceed the highest rate established in regulations of the Farmers Home Administration for the type of loan indicated above.

Principal and interest shall be paid in 21 installments as indicated below, except as modified by a different rate of interest, on or before the following dates:

$ 23,941.00 on January 1, 19 85 ; $ N/A on January 1, 19 ___;
$ N/A on January 1, 19 ___; $ N/A on January 1, 19 ___;
$ N/A on January 1, 19 ___; $ N/A on January 1, 19 ___;
$ N/A on January 1, 19 ___; $ N/A on January 1, 19 ___;
$ N/A on January 1, 19 ___; $ N/A on January 1, 19 ___;
$ N/A on January 1, 19 ___; $ N/A on January 1, 19 ___;
and $ 23,941.00 thereafter on January 1st of each year until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable 20 years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval by the Government will be given provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown in the Record of Advances at the end of this note. Borrower authorizes the Government to enter the amount(s) and date(s) of such advance(s) in the Records of Advances.

For each rescheduled, reamortized or consolidated note, interest accrued to the date of this instrument shall be added to principal and such new principal shall accrue interest at the rate evidenced by this instrument.

Every payment made on any indebtedness evidenced by this note shall be applied first to interest accrued as of the date of receipt of the payment and then to principal.

1: 4/9 GOVERNMENT EXHIBIT 2 Position 2 8/85

Prepayments of scheduled installments, or any portion thereof, may be made at any time at the option of the Borrower. Refunds and extra payments, as defined in the regulations (7 CFR §1951.8) of the Farmers Home Administration according to the source of funds involved, shall, after payment of interest, to be applied to the last installment to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled herein.

If the Government at any time assigns this note and insures the payment thereof, Borrower shall continue to make payments to the Government as collection agent for the holder. While this note is held by an insured holder, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on an installment due date basis. The effective date of every payment made by Borrower, except payments retained and remitted by the Government on an installment due date basis, shall be the date of the United States Treasury check by which the Government remits the payment to the holder. The effective date of any prepayment retained and remitted by the Government to the holder on an installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between such date and the date of the Treasury check to the holder.

Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced hereby, at the option of the Government shall become a part of and bear interest at the same rate as the prinicpal of the debt evidenced hereby and be immediately due and payable by Borrower to the Government without demand.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced hereby shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, Borrower will operate such property as a farm if this is a Farm Ownership loan.

If "Consolidation and subsequent loan," "Consolidation," "Rescheduling," or "Reamortization" is indicated in the "Action Requiring Note" block above, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of the unpaid principal and interest on the following described note(s) or assumption agreement(s) (new terms):

| FACE AMOUNT | INT. RATE | DATE | ORIGINAL BORROWER | LAST INSTALL. DUE |
|---|---|---|---|---|
| $ | % | , 19 | | , 19 |
| $ | % | , 19 | | , 19 |
| $ | % | , 19 | | , 19 |
| $ | % | , 19 | | , 19 |
| $ | % | , 19 | | , 19 |
| $ | % | , 19 | | , 19 |
| $ | % | , 19 | | , 19 |

Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidating, rescheduling or reamortizing. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

REFINANCING (GRADUATION) AGREEMENT: If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, at the Government's request, apply for and accept a loan(s) in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock.

DEFAULT: Failure to pay when due any debt evidenced hereby or perform any covenant of agreement hereunder shall constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default hereunder. UPON ANY SUCH DEFAULT, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act, or the Emergency Agricultural Credit Adjustment Act of 1978 and for the type of loan as indicated in the "Kind of Loan" block above. This Note shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions hereof.

1: 5/9

9/85

Presentment, protest, and notice are hereby waived.

(SEAL) L. J. Farms
(Borrower)

(SEAL)
(Borrower)

"AS PARTNERS"

Patrick J. Esch

Dennis L. Esch

"AS INDIVIDUALS"

Patrick J. Esch

Arlene K. Esch

Dennis L. Esch

Kathleen H. Esch

By: Dennis L. Esch, Attorney in Fact
Box 17

Two Buttes, CO 81084

| RECORD OF ADVANCES | | | | | |
|---|---|---|---|---|---|
| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
| $ 235,030 | 7-10-84 | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| | | | TOTAL | $ 235,030 | |

I: 6/9

10/85

USDA-FmHA
Form FmHA 1940-17
(Rev. 6-16-81)

# PROMISSORY NOTE

| KIND OF LOAN | |
|---|---|
| Type: EM | |
| Pursuant to: | |
| ☒ Consolidated Farm & Rural Development Act | |
| ☐ Emergency Agricultural Credit Adjustment Act of 1978 | |
| **ACTION REQUIRING NOTE** | |
| ☒ Initial loan | ☐ Rescheduling |
| ☐ Subsequent loan | ☐ Reamortization |
| ☐ Consolidation & subsequent loan | ☐ Credit sale |
| ☐ Consolidation | ☐ Deferred payments |

| Name | |
|---|---|
| L. J. Farms | |
| State: Colorado | County: Baca |
| Case No.: 05-05-1340346 | Date: July 10, 1984 |
| Fund Code: 43 | Loan No.: 02 |

FOR VALUE RECEIVED, the undersigned Borrower(s) and any comakers jointly and severally promise to pay to the order of the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, (herein called the "Government"), or its assigns, at its office in Springfield, CO ________, or at such other place as the Government may hereafter designate in writing, the principal sum of ONE HUNDRED THOUSAND AND NO/100------------ dollars ($ 100,000.00 ), plus interest on the unpaid principal balance at the RATE of FIVE percent ( 5 %) per annum. If this note is for a Limited Resource loan (indicated in the "Kind of Loan" box above) the Government may CHANGE THE RATE OF INTEREST, in accordance with regulations of the Farmers Home Administration, not more often than quarterly, by giving the Borrower thirty (30) days prior written notice by mail to the Borrower's last known address. The new interest rate shall not exceed the highest rate established in regulations of the Farmers Home Administration for the type of loan indicated above.

Principal and interest shall be paid in 21 installments as indicated below, except as modified by a different rate of interest, on or before the following dates:

$ 8,025.00 on January 1, 19 85 ; $ N/A on January 1, 19 __;
$ N/A on January 1, 19 __; $ N/A on January 1, 19 __;
$ N/A on January 1, 19 __; $ N/A on January 1, 19 __;
$ N/A on January 1, 19 __; $ N/A on January 1, 19 __;
$ N/A on January 1, 19 __; $ N/A on January 1, 19 __;
$ N/A on January 1, 19 __; $ N/A on January 1, 19 __;
and $ 8,025.00 thereafter on January 1st of each year until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable 20 years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval by the Government will be given provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown in the Record of Advances at the end of this note. Borrower authorizes the Government to enter the amount(s) and date(s) of such advance(s) in the Records of Advances.

For each rescheduled, reamortized or consolidated note, interest accrued to the date of this instrument shall be added to principal and such new principal shall accrue interest at the rate evidenced by this instrument.

Every payment made on any indebtedness evidenced by this note shall be applied first to interest accrued as of the date of receipt of the payment and then to principal.

1:7/9

GOVERNMENT EXHIBIT 4

11/85

Prepayments of scheduled installments, or any portion thereof, may be made at any time at the option of the Borrower. Refunds and extra payments, as defined in the regulations (7 CFR §1951.8) of the Farmers Home Administration according to the source of funds involved, shall, after payment of interest, to be applied to the last installment to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled herein.

If the Government at any time assigns this note and insures the payment thereof, Borrower shall continue to make payments to the Government as collection agent for the holder. While this note is held by an insured holder, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on an installment due date basis. The effective date of every payment made by Borrower, except payments retained and remitted by the Government on an installment due date basis, shall be the date of the United States Treasury check by which the Government remits the payment to the holder. The effective date of any prepayment retained and remitted by the Government to the holder on an installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between such date and the date of the Treasury check to the holder.

Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced hereby, at the option of the Government shall become a part of and bear interest at the same rate as the prinicpal of the debt evidenced hereby and be immediately due and payable by Borrower to the Government without demand.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced hereby shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, Borrower will operate such property as a farm if this is a Farm Ownership loan.

If "Consolidation and subsequent loan," "Consolidation," "Rescheduling," or "Reamortization" is indicated in the "Action Requiring Note" block above, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of the unpaid principal and interest on the following described note(s) or assumption agreement(s) (new terms):

| FACE AMOUNT | INT. RATE | DATE | ORIGINAL BORROWER | LAST INSTALL. DUE |
|---|---|---|---|---|
| $ | % | , 19 | | , 19 |
| $ | % | , 19 | | , 19 |
| $ | % | , 19 | | , 19 |
| $ | % | , 19 | | , 19 |
| $ | % | , 19 | | , 19 |
| $ | % | , 19 | | , 19 |
| $ | % | , 19 | | , 19 |

Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidating, rescheduling or reamortizing. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

REFINANCING (GRADUATION) AGREEMENT: If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, at the Government's request, apply for and accept a loan(s) in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock.

DEFAULT: Failure to pay when due any debt evidenced hereby or perform any covenant of agreement hereunder shall constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default hereunder. UPON ANY SUCH DEFAULT, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act, or the Emergency Agricultural Credit Adjustment Act of 1978 and for the type of loan as indicated in the "Kind of Loan" block above. This Note shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions hereof.

I: 8/9

12/85

Presentment, protest, and are hereby waived.

(SEAL) L. J. Farms (Borrower)

(SEAL) (Borrower)

"AS PARTNERS"

Patrick J. Esch

Patrick J. Esch

Dennis L. Esch

Dennis L. Esch

"AS INDIVIDUALS"

Patrick J. Esch

Patrick J. Esch

Arlene K. Esch

Arlene K. Esch

Dennis L. Esch

Dennis L. Esch

Kathleen H. Esch

Kathleen H. Esch

By: Dennis L. Esch

Dennis L. Esch, Attorney in Fact

Box 17

Two Buttes, CO 81064

| RECORD OF ADVANCES | | | | | |
|---|---|---|---|---|---|
| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
| $ 100,000 | 7-10-84 | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| | | | TOTAL | $ 100,000 | |

I: 9/9

13/85

# EXHIBIT #2

Recorded at ......4:23...... o'clock ...P. M. ...7-10-84......
Reception No ......357758...... Recorder. Book 508 Page 543
[illegible] Deputy. Fee 12.00 pd.

# Deed of Trust — Public Trustee

THIS DEED OF TRUST is a conveyance in trust of real property to the Public Trustee of the county in Colorado in which the Property described below is located. It has been signed and delivered by the "Debtor" to secure the "Indebtedness" owing to the "Beneficiary"

THE SPECIFIC TERMS OF THIS INSTRUMENT ARE:

**Debtor(s):** (Give the name(s) and address(es) of each Debtor) L. J. Farms, a Colorado Partnership
P. O. Box 17, Two Buttes, Colorado 81084

**Beneficiary(ies):** (Give the name(s) and address(es) of each Beneficiary) Laurence J. Esch
Rural Route 1, Box 13, Spaulding, Nebraska 68665

**Indebtedness:** (Give the date, amount, and maturity of the note(s); or the description of other form of obligation; indicate if future advances are provided for)

July 10, 1984; One Million Thirty-Thousand and No/100 ($1,030,000.00) Dollars
Matures January 10, 1985

**Real Property Description:** (Include county and street address)

SEE ATTACHED SCHEDULE A

**Default Interest Rate:** At an annual rate, with adjustments, determined on the same basi[s] as the rate before maturity.

**Prior Encumbrances** (if any):

Subject to Deed of Trust in favor of the Federal Land Bank of Wichita, Kansas recorded in Book 447, Pages 89-91, of the Baca County records.

THE GENERAL TERMS OF THIS INSTRUMENT ARE:

**Conveyance and Warranties.** For valuable consideration, the Debtor hereby conveys the Property to the Public Trustee of the county in Colorado in which the Property is located, in trust for the Beneficiary. The "Property" includes the real estate described above (under Specific Terms) together with all of the improvements located on the Property, now or in the future, and all easements, rights, royalties, minerals, property interests under leases, water rights and rights to transport water (including [illegible] wells, pumps and meters), and all other appurtenances to the Property of whatever description, [illegible] replacements and additions. The Debtor hereby warrants title to the Property, subject to the following matters: (i) the lien of the general property tax for the year of this Deed of Trust, (ii) any special assessments for indebtedness not due and payable on the date of this Deed of Trust, (iii) easements, rights-of-way, reservations, covenants, restrictions, and mineral or other leases, to the extent that any of those items has been established by an instrument recorded prior to the date of this Deed of Trust in the real estate records of the county in which the Property is located, or to the extent that any of these items has been established by use, and (iv) any prior encumbrances specifically referred to above (under Specific Terms). This conveyance is in trust for the benefit of the Beneficiary, and the Debtor acknowledges that the Public Trustee of the county in which the Property is located, as well as any duly appointed successor, shall have with respect to the Property, all of the rights, powers and authority granted by applicable Colorado law and by the terms of this Deed of Trust including the power of sale in the event of default.

**Assignment of Rents and Royalties.** In conjunction with the conveyance of the Property to the Public Trustee the Debtor hereby assigns to the Beneficiary as additional security for the Indebtedness all rents, royalties and other payments attributable to the use or consumption of the Property. However the Debtor shall, unless and until the Beneficiary exercises his acceleration rights following a default, have the right to collect and retain all such rents, royalties and other such payments as they become due and payable.

**Condemnation Awards.** The Debtor hereby assigns to the Beneficiary all condemnation awards paid with respect to the Property except for any portion of the award which exceeds the balance of the Indebtedness and except for any portion of the award which the Beneficiary elects not to accept. The words "condemnation award" include all payments made by any condemning authority for the taking of or for damage to the Property or any portion of the Property, and also include payments made in lieu of condemnation. The Debtor retains the right to that portion of the award which exceeds the amount of Indebtedness due at the time of the award.

**Waiver of Homestead.** The Debtor hereby fully and absolutely waives and releases his right under any Colorado or federal law, including any enacted in the future, to claim the Property as a homestead or to claim any other exemption with respect to the Property. This paragraph is made for the benefit only of the Beneficiary (as defined below) and may not be relied upon by any other person.

**Debtor's Retained Rights.** The Debtor retains the right to the possession, use and enjoyment of the Property, except as otherwise provided in this Deed of Trust. The Debtor also retains the right to require the Public Trustee to fully release the interest in the Property conveyed to the Public Trustee by this Deed of Trust at such time as the Indebtedness has been fully paid or otherwise satisfied, and the Debtor retains the right to require partial release by the Public Trustee, if provisions for partial releases have been added or referred to below. The Debtor shall be entitled to reimbursement from the Beneficiary for all costs incurred by the Debtor in obtaining releases or partial releases, to the extent the costs are related to a failure or a refusal of the Beneficiary to deliver to the Public Trustee the note evidencing the Indebtedness and to deliver any other instruments lawfully required by the Public Trustee.

**Additions to Indebtedness.** The Indebtedness with respect to which this Deed of Trust is given includes not only the balance from time to time of the indebtedness described above (under Specific Terms) but also includes all amounts owing under extensions of the note(s) evidencing the Indebtedness, plus future advances made by the Beneficiary to the Debtor and interest on future advances (if the description of the Indebtedness under Specific Terms mentions future advances), plus all expenditures rightfully made or incurred by the Beneficiary to protect the security of this Deed of Trust and to correct any violations by the Debtor of the covenants of this Deed of Trust, together with interest on the amounts of such expenditures calculated at the default interest rate set forth under Specific Terms.

**Covenants by Debtor.** In addition to warranting title to the Property, the Debtor covenants and agrees

(a) to pay the Indebtedness according to the terms and requirements of the note(s) or other documents evidencing the Indebtedness,

(b) to keep the Property in good condition and repair and to neither demolish nor move any improvements without the written consent of the Beneficiary, to neither commit nor permit any act by which the value of the Property would be impaired, to neither violate nor permit the violation of any law affecting the use and maintenance of the Property and to neither commit nor suffer waste to the Property

(c) to pay, within the time allowed by law, all taxes, assessments and any other charges levied on the Property, if such taxes, assessments and other charges could have priority over this Deed of Trust.

(d) to keep all buildings and other insurable structures on the Property continuously insured, at the cost of the Debtor, against perils covered by a standard fire insurance policy with endorsements for extended coverage, vandalism, [illegible] mischief, and optional perils, or, at the choice of the Debtor, to keep in force a standard all-risk policy. In any case, such coverage shall be provided by one or more companies authorized to issue insurance in Colorado and the amount of the coverage shall be equal to the full insurable value of all the buildings and other insurable structures, unless the Beneficiary agrees in writing to a lesser amount of coverage. The Beneficiary shall be named as an additional insured on all such policies under a standard mortgage clause. Each such policy also shall contain a provision requiring written notice to the Beneficiary at least 30 days prior to the effective date of any cancellation or non-renewal of the policy. At the request of the Beneficiary, all insurance policies required by this paragraph, or [illegible], shall be kept in his possession.

15/85

Exhibit A "2"

1/10

[illegible] Exhibit No: II 000346

Book 508 Page 544

(e) if the Property constitutes an interest in a condominium unit, to comply with all restrictions and requirements imposed by the condominium declaration and by the bylaws, rules and regulations of the homeowner's association;
(f) to refrain from changing the zoning of the Property without the written consent of the Beneficiary;
(g) to pay when due the indebtedness secured by any prior encumbrance;
(h) to reimburse the Beneficiary for any amounts which the Beneficiary advances in order to cure defaults by the Debtor with respect to the payment of taxes, assessments, insurance premiums, and amounts due on prior encumbrances, and to pay interest on the amount advanced at the default interest rate. The Debtor hereby authorizes the Beneficiary to cure any such defaults by the Debtor;
(i) if a foreclosure proceeding is commenced, to pay all of the costs of the proceeding including but not necessarily limited to public trustee's fees, publication costs, the cost of obtaining title evidence, and reasonable attorney's fees and to reimburse the Beneficiary for any of those items paid by the Beneficiary together with interest at the default interest rate;
(j) to surrender possession of the Property peacefully at such time as the Debtor's right of possession of the Property terminates;
(k) if the Property consists in part or entirely of the Debtor's interest as a lessee, to comply with and satisfy in a timely manner all of the obligations under the lease.

**Default and Acceleration.** The Debtor will be considered to have defaulted under this Deed of Trust if the Debtor (i) defaults on the note(s) or other instrument evidencing the indebtedness or (ii) fails to perform or observe any other covenant or term of this Deed of Trust, or (iii) is adjudicated a bankrupt or makes a general assignment for the benefit of his creditors. In the event of any such default, the Beneficiary may declare the entire balance of the indebtedness immediately due and payable (i.e. may "accelerate" the indebtedness) and may then take the following remedial actions. The Beneficiary may take immediate possession and control of the Property and repair and maintain it at the expense of the Debtor. The Beneficiary may collect and receive any and all rents, issues, and profits from the Property, and the Beneficiary may apply for the appointment of a receiver and shall be entitled to such appointment as a matter of right without regard to the solvency or insolvency of the Debtor and without regard to the value of the Property and its adequacy as security for the indebtedness. The receiver may be appointed by a court of competent jurisdiction upon ex parte application and without notice, notice being expressly waived by the Debtor. In addition, the Beneficiary may institute foreclosure, as provided in the next paragraph.

**Foreclosure.** If the Debtor defaults under this Deed of Trust and whether or not the Beneficiary elects to accelerate the indebtedness (as allowed under the preceding paragraph) the Beneficiary may institute the sale of the Property by making the demand and giving the notices required by Colorado law. The sale may be held pursuant either to a court foreclosure suit or to an administrative proceeding conducted by the Public Trustee. The sale shall be scheduled and conducted and notice of the sale and of the rights to cure default and to redeem shall be given, all as provided by Colorado law. Unless Colorado law provided otherwise, notice of sale shall be advertised once a week for not less than four weeks in some newspaper of general circulation in the county where the Property is located. The sale shall be public and shall be held at the front door of the court house in which the Property is located, or at such other lawful place as provided by law. The Property shall be sold to the highest bidder. The Beneficiary may become a purchaser of the Property at the sale. The Property shall be sold in separate parcels or as one parcel, as the Public Trustee determines would be most advantageous. The Public Trustee shall issue all certificates and deeds as authorized and required by Colorado law. The Public Trustee shall deal with the proceeds of the sale as provided by Colorado law, and no purchaser shall be obligated to see to the application of those proceeds. The sale shall forever bar the Debtor from claiming any interest in the Property, subject to all rights of redemption provided by Colorado law.

**Application of Funds.** Amounts payable by insurers under hazard insurance policies covering the Property, whether paid to the Debtor or the Beneficiary, shall be used to restore or repair the Property unless, in the reasonable judgment of the Beneficiary, it would be necessary to apply all or a portion of the proceeds to the indebtedness in order to protect the security of the Beneficiary. In order to enable the Beneficiary to exercise his rights under this paragraph, the Debtor shall promptly inform the Beneficiary as to the fact of any loss or damage to the Property, the amount of available insurance proceeds, the cost of restoration or repair, and as to all other information reasonably requested by the Beneficiary. Any insurance proceeds which are to be paid on the indebtedness, following the Beneficiary's reasonable determination that such payment is necessary to protect his security, and any amounts received by the Beneficiary or by a receiver from condemning authorities or from persons paying rent or royalties after a default, shall be applied in the following manner in the following order: (i) as a payment to the Beneficiary to reimburse him for costs, including reasonable attorney's fees, incurred to collect such amounts; (ii) as a payment in satisfaction of any past-due payments on the indebtedness; (iii) as a pre-payment on the indebtedness; and (iv) as a refund to the Debtor, to the extent that the indebtedness has been fully paid. Any amounts applied as a partial pre-payment of the indebtedness shall not defer or alter the timing and amounts of installments of indebtedness thereafter falling due, except to the extent that the installments last falling due are satisfied by virtue of any partial pre-payment.

**Subsequent Parties.** All references in this Deed of Trust to the "Beneficiary" include not only the Beneficiary named under Specific Terms above but also any person or entity who becomes the owner of the note(s) or other evidence of the indebtedness after the date of this Deed of Trust. The reference also includes the holder of a certificate of purchase issued in conjunction with a foreclosure sale under this Deed of Trust. If any person other than the Debtor acquires any interest in the property in the future, that person shall be subject to all of the covenants, obligations, and restrictions of this Deed of Trust to the same extent as the Debtor, and accordingly, all references in this Deed of Trust to the "Debtor" include that person; this shall not, however, release the original Debtor or any intervening Debtor from obligation on this Deed of Trust and on the note or other instrument evidencing the indebtedness, to the extent of those obligations otherwise existing.

**Due on Sale.** If all or any part of the Property or any interest in the Property is sold or transferred in a transaction which is a "prohibited sale or transfer", the Beneficiary may, at his option, treat this Deed of Trust as being in default and may accelerate the indebtedness as provided above. If the Beneficiary is prohibited by Colorado law from declaring the default and acceleration, the Beneficiary may nevertheless require the transferee to accept a lawful interest rate increase; the refusal or failure of the transferee to accept in writing the lawful interest rate increase shall constitute in itself a default under this Deed of Trust. A "prohibited sale or transfer" is any sale or transfer, including one in which the conveyance of title is deferred, and including the granting of an option to purchase eventual title at a future date, but not including (i) the creation of a lien or encumbrance subordinate to this Deed of Trust, (ii) the transfer of title by devise or descent or by operation of law upon the death of a joint tenant, (iii) the grant of any leasehold interest of three years or less not containing an option to purchase, or (iv) a sale or other transfer to which the Beneficiary consents in writing. Notwithstanding any other provision of this paragraph, the Beneficiary shall have no right to declare a default if the Beneficiary and the transferee mutually agree in writing to the assumption of the indebtedness by the transferee. (This paragraph is optional and is to be crossed-out if not agreed to.)

**Miscellaneous Provisions.** The following miscellaneous provisions shall apply:
(a) any forbearance by the Beneficiary in exercising any right or remedy shall not affect the rights of the Beneficiary with respect to subsequent defaults or violations;
(b) all remedies provided by this Deed of Trust are distinct and cumulative to any other right or remedy either under this Deed of Trust or available in any law or statute, and all such remedies may be exercised concurrently, independently or successively;
(c) if two or more persons have signed as "Debtor", they are jointly and severally obligated;
(d) in the event that any provision or clause of this Deed of Trust is in conflict with applicable law, the conflict shall not affect other provisions of this Deed of Trust which can be given effect without the conflicting provision;
(e) the procedural provisions of this Deed of Trust shall be deemed to be automatically amended as necessary to conform to any Colorado statute or rule of court, now existing or adopted after the date of this Deed of Trust, to the extent that such statute or rule of court provides procedures which are in conflict with those set forth in this Deed of Trust and to the extent that the statute or rule of court is applicable to the security transaction which is the subject of this Deed of Trust;
(f) if the Debtor and the Beneficiary have agreed to additional terms and conditions respecting this security transaction, including as an example an agreement to establish a fund to be used to pay taxes and insurance premiums or an agreement providing for partial releases of this Deed of Trust, then any such supplemental agreement, if in writing, signed and acknowledged, shall be given effect and if any of its provisions conflict with those set forth in this Deed of Trust the provisions of the supplemental agreement shall control; if this Deed of Trust has been recorded, the supplemental agreement, to be effective, also must be recorded;
(g) words in this Deed of Trust denoting the singular shall be read as denoting the plural, and masculine pronouns shall be read as feminine or neuter pronouns, if the circumstances so require;
(h) paragraph headings are for the reader's convenience and shall not be considered in determining the meaning of this instrument.

Date of the Deed of Trust July 10, 1984

Executed by the Debtor(s) as of the above date.

Signature Clause for Corporation, Partnership or Association: | Signature Clause for Individual(s):

L. J. Farms, a Colorado Partnership
Name of Corporation, Partnership or Association

By x Dennis F Esch | x Dennis F Esch Debtor

By x Patrick J Esch | x Patrick J Esch Debtor

Attest ______________ | Debtor

After recording, return to:
KINTON D. RI[illegible]
801 MAIN STREET
SPRINGFIELD, CO. 81073

STATE OF Nebraska
COUNTY OF Douglas } ss.

The foregoing instrument was acknowledged before me this 10th day of July 1984

By* Dennis L Esch, individually and as a partner of L. J. Farms, a partnership

(* name individual Debtor(s) or if Debtor is Corporation, Partnership or Association, then identify signers as president or vice president and secretary or assistant secretary of corporation or as partner(s) of partnership or authorized member(s) of association.)

GENERAL NOTARY – State of Nebraska
LARRY R. GOOD
My Comm. Exp. March 2, 1987

[signature]

16/85

2:2/6

000347

Book 508 Page 545

State of Colorado )
) ss.
County of Baca )

The foregoing instrument was acknowledged before me this 10th day of July, 1984, by Patrick J. Esch, individually and as a partner of L. J. Farms, a partnership.

Witness my hand and official seal.

Norma L. Smith
Notary Public
Springfield, CO 81073

My Commission Expires: 1/31/86.

NORMA L. SMITH NOTARY PUBLIC STATE OF COLORADO

17/85



2: 3/6

SCHEDULE A - BACA COUNTY, COLORADO, REAL PROPERTY

Township 31 South, Range 44 West of the 6th P.M.

Section 3: Lots 15, 17, 27 (West of County road) and 28
Section 4: Lots 6, 7, 17, 19, 24, 25
Sections 3 & 4: Tract 43
Section 5: Lots 5, 6, 14, 17, 18, 20, 21, 25, 26, 27, 28, 30, 34, 35, 39, 41, 43, Tract 47, 8 acre tract adjacent to Cimarron and Dodge City Railway, NW¼SE¼ and 5 acres R.R.
Sections 5 & 6: Tract 49
Section 6: Lots 22, 23
Section 25: Lot 5

Township 29 South, Range 44 West of the 6th P.M.

Section 7: Lots 1, 2, 3, 4, E½W½
Section 16: All
Section 18: E½, E½NW¼, NE¼SW¼, Lots 1, 2, 3
Section 19: SE¼NE¼, S½SE¼
Section 20: All
Section 21: SW¼
Section 23: SE¼
Section 26: All
Section 27: E½NE¼
Section 28: NW¼
Section 29: All
Section 30: E½
Section 34: E½SE¼
Section 35: W½, N½NE¼

Township 29 South, Range 45 West of the 6th P.M.

Section 3: Lots 1, 2, 3, 4, S½N½, S½
Section 4: Lots 1, 2, 3, 4, S½N½, S½
Section 5: Lots 1, 2, 3, 4, S½N½
Section 6: Lots 1, 2, 3, 4, 5, 6, 7, S½NE¼, E½SW¼, SE¼, SE¼NW¼
Section 7: Lots 1, 2, 3, 4, NE¼NE¼, E½SW¼, W½SE¼, SE¼SE¼
Section 8: E½, E½W½, NW¼NW¼, SW¼SW¼
Section 9: All
Section 10: All
Section 11: SE¼
Section 12: E½, SW¼
Section 13: All
Section 14: All
Section 15: All
Section 16: All
Section 17: All
Section 18: Lot 1, NE¼NW¼, E½
Section 19: Lots 2, 3, 4, E½, SE¼NW¼, E½SW¼
Section 20: N½
Section 21: N½, E½SW¼, SW¼SW¼, SE¼
Section 22: SE¼, N½, SW¼
Section 23: All
Section 24: NW¼NE¼, NE¼NW¼, W½NW¼, S½
Section 25: E½
Section 26: W½
Section 27: N½, SE¼
Section 28: N½
Section 29: NW¼
Section 30: Lots 1, 2, E½NW¼, NE¼

Township 29 South, Range 46 West of the 6th P.M.

Section 1: S½
Section 12: N½NE¼

18/85

000349

2:4/6

Recorded at 4:'E o'clock P. M. 7-10-84 Fee 6.00

Reception No. 357759 Shirley ... Recorder, ... Deputy

Book 208 Page 547

RECORDER'S STAMP

THIS INDENTURE, Made this 10th day of July, 19 84, between Laurence J. Esch

hereinafter called the assignor, of the first part, and Douglas County Bank & Trust Co.,

hereinafter called the assignee, of the second part, witnesseth, that

WHEREAS L. J. Farms (a Colorado General Partnership) did, by a certain Trust deed, dated the 10th day of July, 1984, filed for record in the office of the Recorder of the County of Baca, in the State of Colorado, on the 10th day of July, 1984, and duly recorded in book 501, at page 543 (Film No. ____ Reception No. 357751), grant, bargain, sell and convey the property therein and hereinafter described to Laurence J. Esch and his assigns, to secure the payment of a promissory note, for the principal sum of One Million Thirty Thousand and No/100 ($1,030,000.00) Dollars and interest.

NOW, THEREFORE, in consideration of the sum of One Million Thirty Thousand and No/100 ($1,030,000.00) Dollars, paid by the said assignee to the said assignor, the receipt whereof is hereby acknowledged, the said assignor hereby assign unto the said assignee, the said Trust deed and note secured thereby, together with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said assignor hereby grants and conveys unto the said assignee, the following described property situate in the County of Baca, and State of Colorado, to wit:

SEE SCHEDULE A ATTACHED

TO HAVE AND TO HOLD the said Trust deed and note, and also the said property unto the said assignee forever, subject to the terms contained in said Trust deed and note.

And the said assignor hereby covenants with the said assignee that the said Trust deed and note hereby assigned is a good and valid security and that the sum of One Million Thirty Thousand and No/100 Dollars remains unpaid on the said note, and that the said assignor has not done or permitted any act, matter or thing whereby the said Trust deed has been released or discharged, either partly or in entirety and has the right to assign said Trust deed and note and will upon request do, perform and execute every act necessary to enforce the full performance of the covenants and agreements therein contained and that this assignment and the covenants herein shall inure to the benefit of and extend to and be binding upon the heirs, executors, administrators, successors and assigns of the respective parties hereto.

IN WITNESS WHEREOF, the party of the first part has executed these presents the day and year first above written.

Signed, sealed and delivered in the presence of

Laurence J. Esch (signature)

Laurence J. Esch

______________________ [SEAL]

______________________ [SEAL]

______________________ [SEAL]

STATE OF ~~COLORADO~~ Nebraska, County of Douglas } ss.

The foregoing instrument was acknowledged before me this 10 day of July, 19 84

by* Laurence J. Esch

Witness my hand and official seal.

My commission expires March 2, 1987

GENERAL NOTARY – State of Nebraska
LARRY B. GOOD
My Comm. Exp. March 2, 1987

(signature) Notary Public.

KENTON D. KINNAIRD
801 MAIN STREET
SPRINGFIELD, CO. 81073

*If by natural person or persons here insert name or names; if by person acting in representative or official capacity or as attorney-in-fact, then insert name of person as executor, attorney-in-fact or other capacity or description; if by officer of corporation, then insert name of such officer or officers, as the president or other officers of such corporation, naming it. [illegible] Sec. 118-6-4 Colorado Revised Statutes 1963.

2:5/6

19/85

000350

Book 501 Page 548

SCHEDULE A - BACA COUNTY, COLORADO, REAL PROPERTY

Township 31 South, Range 44 West of the 6th P.M.

Section 3: Lots 15, 17, 27 (West of County road) and 28
Section 4: Lots 6, 7, 17, 19, 24, 25
Sections 3 & 4: Tract 43
Section 5: Lots 5, 6, 14, 17, 18, 20, 21, 25, 26, 27, 28, 30, 34, 35, 39, 41, 43, Tract 47, 8 acre tract adjacent to Cimarron and Dodge City Railway, NW¼SE¼ and 5 acres R.R.
Sections 5 & 6: Tract 49
Section 6: Lots 22, 23
Section 25: Lot 5

Township 29 South, Range 44 West of the 6th P.M.

Section 7: Lots 1, 2, 3, 4, E½W½
Section 16: All
Section 18: E½, E½NW¼, NE¼SW¼, Lots 1, 2, 3
Section 19: SE¼NE¼, S½SE¼
Section 20: All
Section 21: SW¼
Section 23: SE¼
Section 26: All
Section 27: E½NE¼
Section 28: NW¼
Section 29: All
Section 30: E½
Section 34: E½SE¼
Section 35: W½, N½NE¼

Township 29 South, Range 45 West of the 6th P.M.

Section 3: Lots 1, 2, 3, 4, S½N½, S½
Section 4: Lots 1, 2, 3, 4, S½N½, S½
Section 5: Lots 1, 2, 3, 4, S½N½
Section 6: Lots 1, 2, 3, 4, 5, 6, 7, S½NE¼, E½SW¼, SE¼, SE¼NW¼
Section 7: Lots 1, 2, 3, 4, NE¼NE¼, E½SW¼, W½SE¼, SE¼SE¼
Section 8: E½, E½W½, NW¼NW¼, SW¼SW¼
Section 9: All
Section 10: All
Section 11: SE¼
Section 12: E½, SW¼
Section 13: All
Section 14: All
Section 15: All
Section 16: All
Section 17: All
Section 18: Lot 1, NE¼NW¼, E½
Section 19: Lots 2, 3, 4, E½, SE¼NW¼, E½SW¼
Section 20: N½
Section 21: N½, E½SW¼, SW¼SW¼, SE¼
Section 22: SE¼, N½, SW¼
Section 23: All
Section 24: NW¼NE¼, NE¼NW¼, W½NW¼, S½
Section 25: E½
Section 26: W½
Section 27: N½, SE¼
Section 28: N½
Section 29: NW¼
Section 30: Lots 1, 2, E½NW¼, NE¼

Township 29 South, Range 46 West of the 6th P.M.

Section 1: S½
Section 12: N½NE¼

20/85

000351

2:6/6

# EXHIBIT #3

RECEIVED JAN 12 1988 BACA COUNTY

FILED UNITED STATES BANKRUPTCY COURT DISTRICT OF COLORADO JAN - 6 1988 BRADFORD L. BOLTON BY ........... DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF COLORADO

In Re:

L.J. FARMS, a Colorado Partnership
EIN: 84-0834681

Debtor(s).

CASE Number: 87 B 12287 M

CHAPTER 11
VOLUNTARY

NOTICE OF MEETING OF CREDITORS AND NOTICE OF AUTOMATIC STAY

MEETING OF CREDITORS: JANUARY 29, 1988 at 11:30 a.m.
Room 303, 1845 Sherman Street
Denver, CO 80202

DEBTORS ATTORNEY: JOHN J. FITZGERALD, 9290 W. DODGE RD., STE. 204, Omaha, NE 68114
PHONE: unknown

TO DEBTOR(S), CREDITORS AND OTHER PARTIES IN INTEREST, NOTICE IS GIVEN THAT:

1. A voluntary case under Chapter 11, Title 11, U.S.C. was filed on October 14, 1987 by the above named debtor(s) of P.O. BOX 17, TWO BUTTES, CO 81084.
2. The filing of the voluntary case constitutes an Order For Relief under Chapter 11 and certain acts and proceedings against the debtor(s) and their property are stayed pursuant to 11 U.S.C. §362(a).
3. A meeting of creditors pursuant to 11 U.S.C. §341(a) shall be held at the time and place specified above. The meeting may be continued or adjourned from time to time by announcement at the meeting without further written notice to creditors. The creditors may examine the debtor, and transact such other business as may be proper at the meeting.
4. The debtor(s) shall appear at the §341 meeting. A partnership shall appear by a general partner and a corporation shall appear by its president or authorized executive officer.
5. The debtor has filed, or will file, a list of creditors and equity security holders pursuant to Rule 1007. Any creditor holding a listed claim which is not listed as disputed, contingent, or unliquidated as to amount, may, but need not, file a proof of claim in this case. Creditors whose claims are not listed or whose claims are listed as disputed, contingent, or unliquidated as to amount and who desire to participate in the case or share in any distribution must file their proofs of claim. Any creditors who desire to rely on the list has the responsibility of determining that he is accurately listed. Proof of Claims should be filed with the Clerk of the Bankruptcy Court, 1845 Sherman Street, Fourth Floor, Denver, CO 80203. Notice of the last date for filing claims will be sent at a later time.

Dated: JANUARY 6, 1988

FOR THE COURT:

BRADFORD L. BOLTON, CLERK

22/85

Exhibit A "3"

000316

11/cor.-87
jo

1/2

Exhibit No: DD4 KCE

FILED
UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLORADO
JUN 1 5 1989
BRADFORD L. BOLTON, Clerk
BY .......... DEPUTY CLERK

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF COLORADO

In re:

L.J. Farms,
# 84-0834681,

Debtor(s).

Case No. 87 B 12287 M

NOTICE OF DISMISSAL

TO CREDITORS AND OTHER PARTIES IN INTEREST:

NOTICE IS HEREBY GIVEN that on May 26, 1989, an Order was entered dismissing the debtor's petition herein under the provisions of title 11 of the United States Code.

NOTICE IS FURTHER GIVEN that pursuant to the provisions of section 349 of title 11, unless the Court, for cause, orders otherwise, the dismissal of a case revests the property of the estate in the entity in which such property was vested immediately before the commencement of the bankruptcy case. In addition, the dismissal of a case automatically vacates the discharge of debtor(s) in the event a discharge had previously been entered in the case.

DATED: June 15, 1989

BY ORDER OF THE COURT:

BRADFORD L. BOLTON, CLERK

RECEIVED
JUL 1 2 1989
O.G.C., DENVER

By Anne T. Burcar
Deputy Clerk
U. S. Bankruptcy Court
400 Columbine Building
1845 Sherman Street
Denver, Colorado 80203

23/85

000317

Exhibit No: DD

# EXHIBIT #4

FILED
UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLORADO
SEP 2 1988
BRADFORD L. BOLTON, Clerk
BY ........................ DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE:<br><br>L J FARMS, a Colorado Partnership,<br><br>Tax ID #84-0834681<br><br>Debtors. | CASE NO. 87B-12287M<br>CHAPTER 11 PROCEEDINGS |
| LAURENCE ESCH,<br><br>Applicant,<br><br>vs.<br><br>L J FARMS, a Colorado Partnership,<br><br>Respondents. | INTERNAL CONTROL NUMBER<br>____________________ |

ORDER FOR MODIFICATION OF AUTOMATIC STAY

This matter having come before the Court this 12 day of September, 1988, on Motion of Applicant for Modification of the Automatic Stay, and the Court, having examined its file and being otherwise duly advised, finds:

Notice of Applicant's Motion for Modification of the Stay has been sent pursuant to Local Rule 45 to all parties in interest that the Court would grant the Motion should no response be filed on or before September 6, 1988; that no response has been timely filed; and that cause has been shown for granting

25/85

Exhibit A #4

1/2

Exhibit No: EX-2 Kell

Applicant relief from the stay as requested. The Court therefore Orders:

The Automatic Stay pursuant to 11 USC Section 362(a) is modified to permit Applicant to foreclose his interest in the property set forth in the Applicant's Motion and Deeds of Trust, which is dated and recorded July 10, 1984, in Book 508 at Page 543, Reception Number 357758 of the Real Property Records of Baca County, Colorado; pursuant to State Law, including the right if necessary to take personal judgment against the Debtor for purposes of a judicial foreclosure; provided that Applicant may not execute upon any deficiency judgment against the Debtor without Order of this Court, and to seek or act as Applicant's own receiver in State Court proceedings to take possession, operate and manage the property.

Dated this 17 day of September, 1988.

BY THE COURT:

[signature]

United States Bankruptcy Court Judge

**NOTICE OF ENTRY ON DOCKET**

Notice is Hereby Given that Pursuant to Rule 9022, F.R.B.P., the Foregoing Order of Judgment was

Entered on 9-19-88

By [signature]



26/85

000335

4:2/2

# EXHIBIT #5

UNITED STATES BANKRUPTCY COURT DISTRICT OF COLORADO
SEP 30 1988
BRADFORD L. BOLTON, Clerk
BY ............ DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: | Case No. 87B-12287M<br>Chapter 11 Proceeding |
| L J FARMS, a Colorado Partnership,<br><br>Debtor. | ORDER APPROVING STIPULATED SETTLEMENT |

This matter having come before the Court upon the Motion of the Debtor-in-Possession for approval of Stipulated Settlement and Release wherein both the Debtor and Douglas County Bank & Trust Company, secured creditor herein, are parties, the Court being fully advised in the premises finds as follows:

1. That the Stipulation and Release filed herein arises due to the assignment of the claim of Douglas County Bank & Trust Company, secured creditor, to a third party, Laurence Esch; and, that in part, as a result of the assignment, it is the Debtor's belief that the assignment may facilitate and enhance the ability of a Chapter 11 Reorganization.

2. That the Stipulation and Release is not in controvention of the Bankruptcy Laws nor the Local Rules of the Bankruptcy Court for the District of Colorado, and is in the best interest of the estate of the Debtor-in-Possession.

3. That Notice pursuant to Local Rule 23 has been provided and that no objection to the Motion of the Debtor in Possession having been made nor any request for hearing having been made to

Exhibit A "5"
5:1/6

Exhibit No: HX-2 KCE

this Court, the Motion for approval of the Stipulation and Release should be granted by the Court.

IT IS THEREFORE ORDERED that the Stipulation and Release by and between the Debtor-in-Possession and Douglas County Bank & Trust Company is hereby approved and the Debtor-in-Possession and Douglas County Bank & Trust Company, by and through their respective agents and attorneys of record are hereby granted leave to consummate and complete the Stipulation and Release as therein described.

Dated this 30 day of ~~August,~~ Sept 1988.

BY THE COURT:

U.S. Bankruptcy Judge

NOTICE OF ENTRY ON DOCKET
Notice is Hereby Given that Pursuant to Rule 9022, F.R.B.P., the Foregoing Order of Judgment was entered on OCT 3 1988
By



5:2/6

29/85

000344

STIPULATED SETTLEMENT

Stipulated Settlement entered this day by and between Laurence Esch, an individual, a secured creditor, (Esch) and L. J. Farms, a Colorado Partnership, a Chapter 11 Debtor in Possession, (Debtor).

WHEREAS, Esch holds a promissory note and duly recorded Deed(s) of Trust from Debtor pertaining to real property in Baca County, Colorado, which real property is legally described as Exhibit "A" attached hereto and incorporated herein by this reference;

WHEREAS, the total indebtedness including default interest, attorney fees and charges as represented by Esch to be One Million Two Hundred Seventy-Seven Thousand Nine Hundred Fifty Seven and 00/100 dollars ($1,277,957.00);

WHEREAS, Debtor is presently conducting itself as a Debtor in Possession within the Chapter 11 U.S. Bankruptcy Code via proceedings in the U. S. Bankruptcy Court for the District of Colorado which proceedings appear at Case No. BK87B-12237M;

WHEREAS, within the Bankruptcy proceedings, Esch has moved for relief from the Automatic Stay, or in the alternative, for adequate protection payments;

WHEREAS, during the course of the Debtor's Chapter 11 proceedings, the first secured creditor, Federal Land Bank of Wichita, has by Court approved Stipulation been restructured and the indebtedness owed to Esch has not been restructured by agreement, nor has Esch received adequate protection payment, nor does Esch have reason to believe that he is adequately secured through the real property collateral against which is recorded the Deed(s) of Trust aforedescribed;

WHEREAS, evidentuary hearing within this Chapter 11 proceeding for determination of entitlement of Esch to obtain relief from the Automatic Stay or in the alternative adequate protection payments has been scheduled for September 13, 1988;

WHEREAS, Esch and Debtor have reached certain agreements and accommodations relative to the indebtedness owed by Debtor and the protection of the interest of Esch as it is nonetheless secured but not adequately protected by the real property, Exhibit "A", and in any event premised upon the considerations aforedescribed and the consideration, covenants and conditions set forth hereinafter, the parties hereto agree to this Stipulated Settlement as follows:

1. For the remaining indebtedness owed to Esch by Debtor under the Promissory Note as secured by the Deed(s) of Trust aforedescribed, which total indebtedness approximates by agreement One Million Two Hundred Seventy-Seven Thousand Nine 30/85

5:3/6 Exhibit No: HX-1 KCE 000339

Hundred Fity-Seven and 00/100 Dollars - ($1,277,957.00) in consideration of Debtor stipulating to Esch being granted by Court Order relief from the Automatic Stay in order to pursue advertising and foreclosure of its Deed of Trust in accordance with the laws of the State of Colorado, it thereby being the intention of Esch to be the holder of title to the real property, Exhibit "A", Esch agrees to grant to Debtor or the Debtor's individual partners as they shall elect, a ten (10) year lease for possession, use and control of the real property, Exhibit "A".

2. That in consideration for Esch granting to the Debtor or the individual partners of Debtor the ten (10) year lease of the real property, Exhibit "A", upon such specific terms and conditions as described hereinafter or incorporated within the written lease agreement, the Debtor hereby agrees to consent to the Court granting the relief requested by Esch and to hereby withdraw its resistance/objection to Esch's Motion for Relief.

3. The parties acknowledge and agree that the first secured creditor to the real property, Exhibit "A", is Federal Land Bank of Wichita. The parties hereby agree and acknowledge that the first secured creditor's indebtedness has been restructured in accordance with a Court approved Stipulation. It is further the intention of the parties hereto to provide for and continue the performance and servicing of the restructured indebtedness to the first secured creditor which method of debt servicing and principal party performing actual payment of the scheduled indebtedness shall be determined subsequent hereto by mutual agreement between the parties and incorporated within the terms of their written ten (10) year lease aforedescribed.

4. The parties acknowledge and agree that the Debtor's or the Debtor's partner's use and possession of the real property, Exhibit "A", shall include the uninterrupted and undisturbed right and entitlement of Debtor or the individual partners of Debtor to continue to pursue and to continue participation in the United States Department of Agriculture's Conservation Reserve Program (CRP) as well as all other government farm programs, whether administered through the ASCS, CCC, or other governmental agency as the Debtor or its individual partners shall determine or elect in their sole discretion from time to time throughout their contractual tenancy.

5. The parties acknowledge and agree that the lease agreement aforedescribed shall be reduced to writing by separate document, nonetheless to be incorporated herein by this reference and attached hereto upon completion and execution within thirty (30) days from this date, and which agreement shall nonetheless include the following terms or provisions:

(a) A fair rental value for the property, adjusted annually by negotiation, premised upon the then prevailing agricultural conditions including, but not limited to,

31/85



5:4/6

weather, commodity prices, governmental farm programs, CCC sponsored or administered farm programs and the Debtor or its partners as tenants not giving notice of termination to Esch as shall be expressly provided for within the lease document;

(b) The fair rental value, whether paid for in money or kind, shall nonetheless be sufficient to provide for servicing of the first secured indebtedness owed to the Federal Land Bank of Wichita as restructured and as the restructure has been approved by Order of the Bankruptcy Court with actual payment of debt service with the party making the actual debt service payment to be agreed to between the parties and incorporated within the lease agreement;

(c) A fair rental value which provides either a return on investment to Esch that is of a like level and magnitude consistent with this size of investment and property acquired, or an amount sufficient to reasonable amortize a hypothetical repayment of Esch's investment at a reasonable rate of interest and at a reasonable rate of payment;

(d) An exclusive first option granted to Debtor or its individual partners, as they shall elect in their sole discretion, to repurchase the real property, Exhibit "A", at a fixed price exercisable within a specified period of time, nonetheless incorporated within the written lease to be attached hereto and incorporated herein by reference.

6. The parties hereto bind themselves to execute all documents necessary to effectuate the purpose of this Agreement which includes the execution of the necessary Bankruptcy Court pleadings and have caused this matter to be submitted to the Court in accordance with Bankruptcy Rule relating to compromising settlement of matters in controversy.

7. All captions contained in this Agreement are for convenience and reference only and are not to be interpreted of the provisions of this Agreement.

8. The provisions contained in this Agreement are severable. A determination that any portion of this Agreement is void or unenforceable shall not affect the validity nor enforceability of the remaining portions of this Agreement except as otherwise may be described and set forth hereinabove.

9. When signed by all the parties, this Agreement shall be binding upon the parties, their heirs, legal representatives, successors and assigns.

10. All attached Exhibits referred to in this Agreement are incorporated herein by this reference as if fully set forth in their entirety.

11. This Agreement, inclusive of Exhibits, constitutes the entire Agreement of the parties and supercedes all provisions, previous communications, representations or agreements, either oral or written between the parties. No modification of the Agreement is permitted except in writing executed in the same formalities as this Agreement.

12. Each of the parties hereto has been advised and given adequate opportunity to seek legal and tax counsel, advice and representation regarding this Agreement, and has either consulted with such counsel or has knowingly and voluntarily refused or failed to do so.

13. This Agreement and the interpretation or enforcement thereof shall be governed by applicable U. S. Bankruptcy Law, Title 11, and/or to the extent applicable, by the laws of the State of Colorado.

LAURENCE ESCH, AN INDIVIDUAL
Secured Creditor

BY: John R Raynor
John R. Raynor
11422 Miracle Hills Drive
Suite 440
Omaha, Nebraska 68154
His Attorney

L. J. FARMS, A COLORADO PARTNERSHIP
Debtor

By: Dennis L Esch
Partner
Title/ Partner

STATE OF COLORADO )
) ss.
COUNTY OF Douglas )

On this 9th day of September, 1988, before me, the undersigned, a Notary Public in and for said County and State, personally came Dennis Esch to me known to be the identical person whose name is affixed to the above document and acknowledged the execution thereof to be his voluntary act and deed as partner.

Witness my hand and notarial seal at Omaha in said County and State the day and year last above written.

GENERAL NOTARY-State of Nebraska
JOHN J. FITZGERALD
My Comm. Exp. Febr. 14, 1991

Notary Public

33/85

5: 6/6

000342

# EXHIBIT #6

302—REV. 3-1979 — PUBLIC TRUSTEE'S CERTIFICATE OF PURCHASE — THE C. F. HOECKEL CO., DENVER

PUBLIC TRUSTEE'S

CERTIFICATE OF PURCHASE

No. 115-1988

STATE OF COLORADO }
COUNTY OF Baca } ss.

I, the undersigned Public Trustee, certify that pursuant to the power and authority vested in me by a Deed of Trust dated July 10, 19 84, executed by L. J. Farms, a Colorado Partnership of the County of Baca and State of Colorado, recorded in Book 508, Page 543, (Film No. , Reception No. 357758 )* of the records in the office of the Clerk and Recorder of said County of Baca, and given to secure to Laurence J. Esch the payment of the sum of $ 1,030,000.00 upon the terms and with the covenants contained in said Deed of Trust, upon notice of election and demand for sale in writing, filed with me as Public Trustee, and recorded in Book 537, on Page 153, (Film No. , Reception No. 370246 )* in the records in said last named County, I did, on April 3, 19 89, at 10:00 o'clock A. M., **the date and time to which said sale was duly continued,** having first published a notice of sale and mailed a printed copy thereof to the grantor(s) in said Deed of Trust and to all persons appearing to have acquired a subsequent record interest in said property, and having mailed a notice of the right to cure a default to the grantor(s) of the deed of trust being foreclosed and having mailed a notice of the right to redeem to any subsequent owner of record and any other person having the right to redeem, and to the owners of the property described below, all as provided by law and according to the terms and conditions of said Deed of Trust, expose to public sale the following described property situate in said County of Baca, Colorado, to-wit:

20,000 acres, more or less, of agricultural land more particularly described on Exhibit A attached hereto.

At said sale Laurence J. Esch,

Purchaser(sXXX bid the sum of $2,753,592.34 for said property, being the highest and best bid received therefor, the said property was struck off to the said purchaser(s) and that unless the same be sooner redeemed, the said purchaser(s) will be entitled to a deed for said property upon the expiration of the period or periods of redemption allowed by law to the owner(s), all subsequent lienors and persons entitled to redeem.

Executed in duplicate April 3, 19 89

Vira Forrest (SEAL)
Public Trustee of the
County of Baca, Colorado.

STATE OF COLORADO }
COUNTY OF Baca } ss.

The foregoing instrument was acknowledged before me this 3rd day of April, 19 89, by Vira Forrest as the Public Trustee of the County of Baca, State of Colorado.

My notarial Commission expires Aug. 7, 1992

Witness my hand and official seal.

Ruth M. Wallace
Notary Public

* In Counties where book and page numbers have been abolished.
** If sale was not continued, delete between asterisks.
*** If sale was to a corporation, full name and State of Incorporation should be inserted.

Exhibit A "6"
1/2

Return: Baca County Public Trustee

000353

Exhibit No: JJ Kod

35/85

Book 538 Page 221

SCHEDULE A - BACA COUNTY, COLORADO, REAL PROPERTY

Township 31 South, Range 44 West of the 6th P.M.

Section 3: Lots 15, 17, 27 (West of County road) and 28
Section 4: Lots 6, 7, 17, 19, 24, 25
Sections 3 & 4: Tract 43
Section 5: Lots 5, 6, 14, 17, 18, 20, 21, 25, 26, 27, 28, 30, 34, 35, 39, 41, 43, Tract 47, 8 acre tract adjacent to Cimarron and Dodge City Railway, NW¼SE¼ and 5 acres R.R.
Sections 5 & 6: Tract 49
Section 6: Lots 22, 23
Section 25: Lot 5

Township 29 South, Range 44 West of the 6th P.M.

Section 7: Lots 1, 2, 3, 4, E½W½
Section 16: All
Section 18: E½, E½NW¼, NE¼SW¼, Lots 1, 2, 3
Section 19: SE¼NE¼, S½SE¼
Section 20: All
Section 21: SW¼
Section 23: SE¼
Section 26: All
Section 27: E½NE¼
Section 28: NW¼
Section 29: All
Section 30: E½
Section 34: E½SE¼
Section 35: W½, N½NE¼

No. 370793
STATE OF COLORADO } SS
COUNTY OF BACA
I hereby certify that this instrument was filed for record in my office, at 11:16 o'clock a. 04-03-89
Duly recorded in Book 538 Page 220-221
[signature] Recorder
By D. Baxter Deputy
Fee 6.00 pd

Township 29 South, Range 45 West of the 6th P.M.

Section 3: Lots 1, 2, 3, 4, S½N½, S½
Section 4: Lots 1, 2, 3, 4, S½N½, S½
Section 5: Lots 1, 2, 3, 4, S½N½
Section 6: Lots 1, 2, 3, 4, 5, 6, 7, S½NE¼, E½SW¼, SE¼, SE¼NW¼
Section 7: Lots 1, 2, 3, 4, NE¼NE¼, E½SW¼, W½SE¼, SE¼SE¼
Section 8: E½, E½W½, NW¼NW¼, SW¼SW¼
Section 9: All
Section 10: All
Section 11: SE¼
Section 12: E½, SW¼
Section 13: All
Section 14: All
Section 15: All
Section 16: All
Section 17: All
Section 18: Lot 1, NE¼NW¼, E½
Section 19: Lots 2, 3, 4, E½, SE¼NW¼, E½SW¼
Section 20: N½
Section 21: N½, E½SW¼, SW¼SW¼, SE¼
Section 22: SE¼, N½, SW¼
Section 23: All
Section 24: NW¼NE¼, NE¼NW¼, W½NW¼, S½
Section 25: E½
Section 26: W½
Section 27: N½, SE¼
Section 28: N½
Section 29: NW¼
Section 30: Lots 1, 2, E½NW¼, NE¼

Township 29 South, Range 46 West of the 6th P.M.

Section 1: S½
Section 12: N½NE¼

36/85

000354

6:2/7

# EXHIBIT #7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil No.: 99-M-1896

DAVID ESCH *
845 E. Heartstrong Street
Superior, Co 80027 *
and
DONALD ESCH *
7402 S. Everett Court
Littleton, CO 80123 *
and
JUDITH ESCH BROWN *
602 Hemphill
Sherwood, AR 72116 *
and
PAUL ESCH *
108 Foxridge Drive
Fulsum, CA 85630 *
and
RAYMOND ESCH *
19592 WCR 29
Platteville, CO 80651 *
and
REGINA WORTHINGTON *
1457 N. 96th Avenue
Omaha, NE 68114, *

General Partners of and Doing *
Business as HORSECREEK FARMS,
*
Plaintiffs,
*
vs.
*
DAN GLICKMAN, Secretary,
United States Department *
of Agriculture
14th and Independence Avenue, SW *
Washington, DC 20250
*
Defendant.

---

AFFIDAVIT OF PATRICK J. ESCH IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

---

Exhibit A "7"

1/10

38/85

STATE OF NEBRASKA )
) SS.
COUNTY OF DOUGLAS )

Patrick J. Esch, being first duly sworn, deposes and states as follows:

1. I am a resident of Baca County, Colorado, USA.

2. I am not a party to these proceedings or a partner in the Plaintiff, Horsecreek Farms. The current partners of Horsecreek Farms are David, Donald, Paul and Raymond Esch, Judith Esch Brown and Regina Worthington, who are all my brothers and sisters.

3. I am presently employed as the Farm Manager of Horsecreek Farms and have been continuously so employed since the date the partnership was formed.

4. Horsecreek Farms was established and registered as a Colorado partnership in 1990.

5. I am one of the Defendants in a separate suit now pending in the United States District Court for the District of Colorado styled as United States of America, acting through the Farm Service Agency, United States Department of Agriculture, Plaintiff, vs. Patrick J. Esch, Arlene K. Esch, Dennis L. Esch and Kathleen H. Esch, Defendants, Civil Action File No.: 98-M-2762, United States District Court for the District of Colorado.

6. During the period of my employment by and involvement with Horsecreek Farms, I have been intimately and extensively involved with and responsible for the conduct of financial affairs and business dealings of all type and nature of Horsecreek Farms.

7. As Farm Manager of Horsecreek Farms, I am the individual who bears responsibility for partnership enrollment and participation in farm programs available through and administered by the Defendant, United States of America, through the Farm Service Agency.

8. On behalf of Horsecreek Farms, I have participated in and have first hand knowledge of litigation and administrative proceedings concerning the partnership's participation in farm programs including the Conservation Reserve Program, Production Flexibility Contracts and Loan Deficiency Payments.

9. As to all items and facts herein specifically set forth, I have personal knowledge held by and known to me after and upon the exercise of reasonable and diligent due inquiry.

10. If called to testify at these proceedings, I could and would attest to the truth and accuracy of the factual allegations herein set forth, which are hereby attested as true and accurate to the best of my knowledge and belief.

11. As to items of documentary evidence attached hereto, the same are and constitute (a) records of Horsecreek Farms either made or maintained in the ordinary course of partnership business operations for which I am the duly authorized and acting custodian, (b) matters of public record, or (c) have been previously received in evidence by the Court.

12. On July 10, 1984, my brother Dennis and I, on behalf of L J Farms, borrowed the sum of $835,000.00 from the Farmers Home Administration under an emergency loan program then in effect. Notes, as well as a Deed of Trust, securing the debt were executed

by myself and my brother Dennis, in our capacity as partners of L J Farms, and by myself, my brother Dennis, and our respective spouses as individuals.

13. This July 10, 1984 obligation is the subject of the separate suit referenced in Paragraph 5 hereinabove.

14. On September 4, 1984, all right, title and interest in and to assets of L J Farms was conveyed to a new partnership known and doing business as L J Farms Partnership. Said transfer was made in order to facilitate division of L J Farms holdings among the nine Esch family siblings (brothers and sister), six of whom are Plaintiffs in these proceedings.

15. The nine partners of L J Farms Partnership thereafter bid certain eligible acreages owned by the partners for participation in the Conservation Reserve Program (CRP).

16. In April of 1986, the partners bid for participation in CRP was accepted. Growing crops were destroyed and cover crop was planted on participating acreage.

17. In August of 1986, the partners of L J Farms Partnership were advised that CRP payment and Production Adjustment payment due them in the amount of $628,000.00 was suspended pending completion of an audit by the Office of Inspector General of the Baca County ASCS Office.

18. L J Farms Partnership thereafter initiated legal proceedings in the District Court in and for the District of Columbia.

19. On July 22, 1987, the District Court in and for the District of Columbia determined that ASCS had acted arbitrarily and

capriciously in denying L J Farms Partnership relief as a nine person partnership.

20. A copy of the decision of the United States District Court in and for the District of Columbia is marked as Exhibit "A", attached hereto, and incorporated herein by this reference.

21. The above referenced Court decision was affirmed and modified on May 25, 1989 in a decision issued by the United States Court of Appeals for the District of Columbia. A true and accurate copy of said decision is marked as Exhibit "B", attached hereto, and incorporated herein by this reference.

22. Because of the government's refusal to accept the District Court determination and pay sums due and owing L J Farms Partnership, the partnership was unable to meet its debt and financial obligations. It initiated Chapter 11 reorganization proceedings on August 14, 1987.

23. Relief from the automatic stay of Section 362 of the United States Bankruptcy Code was ultimately obtained by the first lienholder on Partnership property, the Federal Land Bank. Property securing the debt owed the Farmers Home Administration, referenced in Paragraph 12 hereof, was sold at public foreclosure sale on April 3, 1989.

24. At such sale, my father, Laurence Esch, who held a second lien on the property, purchased the property.

25. The Defendant, which held a third lien on the property, did not participate in the above referenced public foreclosure sale or bid in at the sale in such a manner as to protect its security interest in the property which was purchased by my father. As a

consequence, the government's Deed of Trust creating a security interest in the referenced property was foreclosed.

26. On August 28, 1990, a settlement was reached between the nine partners of L J Farms Partnership and the United States of America concerning unpaid CRP payments and Production Adjustment payments.

27. A true and accurate copy of said Settlement Agreement is marked as Exhibit "C", attached hereto, and incorporated herein by this reference.

28. On or about that same date the Defendant, United States of America, pursuant to the terms of said Settlement Agreement, transferred the sum of $1,087,819.40 to the escrow account of the attorneys for L J Farms Partnership. Said funds were immediately disbursed to pay, among other things, attorney's fees due and owing L J Farms Partnership counsel, as well as various outstanding obligations of L J Farms Partnership which had accrued during the pendency of the referenced dispute.

29. On July 10, 1996, Horsecreek Farms enrolled partnership farm ground in the Production Flexibility Contract Program pursuant to a written agreement with the Commodities Credit Corporation, an agency under the general direction and control of FSA.

30. Plaintiffs did not receive guaranteed payments due them under the executed Production Flexibility Contract(s) as agreed and by letter of September 20, 1996, Plaintiffs were advised that FSA would administratively offset PFC payments due to an alleged "conversion" of property securing an obligation owed to the Defendant. A true and accurate copy of the Defendant's

correspondence of September 20, 1996 is marked as Exhibit "D", attached hereto, and incorporated herein by this reference.

31. According to the terms of the notice, the alleged "security property" consists of the proceeds of settlement delivered by the Defendant to L J Farms Partnership on August 28, 1990. The notice incorrectly states that the payment was made to Horsecreek Farms and further incorrectly states that the payment was made in the amount of $1,068,931.65.

32. The Defendant apparently adopted a position more than six years after settlement of the referenced claim with L J Farms Partnership, that it is entitled to the proceeds paid by it to L J Farms Partnership for purposes of applying the same to the FMHA loan entered into between myself, my brother, and our spouses, and the Farmers Home Administration.

33. The attached notice, Exhibit "D", is the first notice of any type or nature provided to Horsecreek Farms by the Defendant concerning sums alleged as due and owing as a consequence of "conversion" of security property.

34. Horsecreek Farms had been regularly and continuously enrolled in farm programs through the FSA since its formation. No prior offsets or notices of intent to offset were ever provided to Horsecreek Farms prior to September 20, 1996.

35. Subsequent to September 20, 1996, after hearing upon Plaintiffs' objection to offset payments held before a hearing officer of the NAD of USDA in Lakewood, Colorado on November 26, 1996, the Defendant caused to be mailed additional "Notification of an Unpaid Debt and Demand for Payment" to members of L J Farms.

The January 7, 1997 "notification" addresses the fact that at the hearing held in Lakewood, Colorado, Horsecreek Farms partners attested that they had not been provided with the notice issued by Defendant on September 20, 1996. A true and accurate copy of such notice is attached hereto as Exhibit "E", has been previously received in evidence, and is incorporated herein by this reference.

36. I do not know why the first notice went to Horsecreek Farms partners and the second notice went to L J Farms partners. I do note that the second notification accurately states the amount of the settlement entered into by and between L J Farms Partnership and the Defendant in August of 1990, to-wit, $1,087,819.40.

37. At all times relevant and known to me, the contracting party with the Defendant, concerning farm program participation for property owned by the partners of Horsecreek Farms, was Horsecreek Farms, not L J Farms Partnership. After 1990, L J Farms Partnership did not engage in business.

38. The Defendant has provided documentary materials, including interest calculations which are in evidence in these proceedings. The referenced materials appear to establish that the Defendant has charged or caused to be accrued, interest at the rate of seven (7%) percent per annum upon sums alleged as due and owing from Horsecreek Farms with interest commencing to accrue on August 28, 1989. (See Exhibit "F" attached hereto, previously received in evidence.)

39. At no time has the Defendant ever disclosed the basis of or provided justification for its determination of the

applicability of a seven (7%) percent per annum interest rate as disclosed on the attached evidentiary materials.

40. So far as I have been able to determine, the first seven (7) payments obtained by the Defendant under administrative offset were applied by the Defendant to retire interest which the Defendant considers as having accrued on the sums due. A majority of the eighth payment obtained by administrative offset was also used to retire interest.

41. According to materials provided to Horsecreek Farms, including, for example, the attached notice of January 17, 1997, ("Ex H") the total claimed as eligible for offset by the Defendant is in the amount of $824,921.65. As of the date of my execution of this affidavit, the government has setoff the total sum of $843,293.30. This allegation is borne out by Exhibit "G", which is attached hereto, incorporated herein by this reference, and which has been previously received in evidence by the Court.

FURTHER AFFIANT SAYETH NOT.

SIGNED this 6 day of February, 2000.

Patrick J. Esch
Patrick J. Esch, Affiant

SUBSCRIBED, SWORN TO AND ACKNOWLEDGED before me this 6th day of February, 2000.

GENERAL NOTARY-State of Nebraska
KELLE J. WESTLAND
My Comm. Exp. Aug. 28, 2003

Kelle J. Westland
Notary Public

7: 9/10

CERTIFICATE OF SERVICE

The undersigned hereby certifies and attests that a copy of the foregoing was served upon the opposing parties by regular United States First Class Mail, the 8 day of February, 2000 at the addresses hereinafter specified:

United States Attorney General
Janet Reno
Main Justice Building, Room 5111
950 Pennsylvania Avenue, N. W.
Washington, D.C. 20530

United States Attorney
Linda A. McMahon
Attention: Civil Process Clerk, Laura Stone
1961 Stout Street
Denver, CO 80294

Mr. Dan Glickman, Secretary
United Stated Department of Agriculture
14th and Independence Avenue, S.W.
Washington, D.C. 20250

Stephen Taylor, Esq.
Assistant U.S. Attorney
Office of the United States Attorney
Civil Division
1961 Stout Street, Suite 1100
Denver, CO 80294

K. C. Engdahl, Nebraska Bar No. 17678
RAYNOR, RENSCH & PFEIFFER
11422 Miracle Hills Dr., #440
Omaha, NE 68154
(402) 498-4400
Attorney for Plaintiffs
Admitted to Practice-United States
District Court, District of Colorado

a:\2AFFPE7.004