# In the United States Court of Federal Claims

No. 06-658C
Filed: July 27, 2007
**TO BE PUBLISHED**

************************************

TIMOTHY ESCH, PAUL ESCH, DAVID ESCH, REGINA WORTHINGTON, RAYMOND ESCH, JUDY ESCH BROWN, DONALD ESCH, and L J FARMS, a Partnership,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

************************************

Equitable Tolling;
Res Judicata;
Settlement Agreement;
Statute of Limitations, 28 U.S.C. § 2501.

**K.C. Engdahl**, Ballew Schneider Covalt Gaines & Engdahl, PC LLO, Omaha, Nebraska, counsel for Plaintiffs.

**Brian T. Edmunds**, United States Department of Justice, Civil Division, Washington, D.C., counsel for Defendant.

**MEMORANDUM OPINION AND FINAL ORDER**

**BRADEN, *Judge*.**

## I. RELEVANT FACTUAL BACKGROUND.[1]

In January of 1984, L J Farms, a Colorado partnership formed by Patrick and Dennis Esch,

---

[1] The facts recited herein were derived from: *Esch* v. *United States*, 49 Fed. Cl. 631 (2001) ("*Esch I*"); *Esch* v. *United States*, 25 F. App'x 942 (Fed. Cir. 2001) ("*Esch II*"); *Esch* v. *Lyng*, 665 F. Supp. 6 (D.D.C. 1987) ("*Lyng*"); *Esch* v. *Yeutter*, 876 F.2d 976 (D.C. Cir. 1989) ("*Yeutter*"); *Esch* v. *Veneman*, No. 00-M-957 (D. Colo. July 16, 2004) ("*Veneman*"); Plaintiff's September 18, 2006 Complaint ("Compl.") and Exhibits thereto ("Compl. Ex. A–B"); Defendant ("Government")'s February 1, 2007 Motion to Dismiss ("Gov't Mot.") and Exhibits thereto ("DX 1–5"); Plaintiff's May 7, 2007 Response to the Motion to Dismiss ("Pl. Resp.") and Exhibits thereto ("PX A–A10"); and the Government's July 9, 2007 Reply ("Gov't Reply").

borrowed approximately $835,000 from the Farmers Home Administration ("FmHA") of the United States Department of Agriculture ("USDA"). *See Esch I*, 49 Fed. Cl. at 632. As security for the loan, L J Farms executed a Deed of Trust on July 10, 1984, conveying a security interest in the real property in Baca County, Colorado to the United States through the FmHA. *Id.*; *see also* PX A2. On September 4, 1984, Dennis and Patrick Esch transferred all of their interest in L J Farms to another Colorado partnership, L J Farms Partnership, established by Patrick Esch and Dennis Esch and the named Plaintiffs.[2] *See Esch I*, 49 Fed. Cl. at 632.

In April 1986, L J Farms Partnership entered into a contract with the USDA through the Commodity Credit Corporation ("CCC")[3] to participate in the Conservation Reserve Program ("CRP").[4] *Id.* Pursuant to the contract, L J Farms Partnership would receive federal subsidies in exchange for removing 12,000 acres of land from production. *See* Compl. ¶ 14; *see also Esch I*, 49 Fed. Cl. at 632. In August of 1986, the CCC suspended payments to L J Farms Partnership while conducting an audit of the Baca County Agricultural Stabilization and Conservation Service Committee, the USDA's local office. *See Lyng*, 665 F. Supp. at 9. The CCC refused to reinstate the CRP payments on the basis that the Partnership had too many partners. *Id.*

On March 31, 1987, Plaintiffs, Patrick Esch, and Dennis Esch filed suit against the USDA in the United States District Court for the District of Columbia, challenging the suspension of CRP payments, due pursuant to the CRP agreement. *See Lyng*, 665 F. Supp. at 6. On July 21, 1987, the District Court held that the USDA "acted arbitrarily, capriciously, without substantial evidence and in the absence of due process in reaching its decision to deny the Eschs relief for 1987 as a nine-person farm operation for payment limitation purposes in defendant's farm programs. . . . That decision must be reversed." *Id.* at 23.

On October 14, 1987, L J Farms Partnership filed in the United States Bankruptcy Court for the District of Colorado for protection under Chapter 11. *See* PX A3 at 1. On April 3, 1989, Laurence Esch became the owner of L J Farms Partnership through a public sale. *See* PX A6 at 1.

---

[2] "Plaintiffs" refers to Timothy Esch, Paul Esch, David Esch, Regina Worthington, Raymond Esch, Judy Esch Brown, Donald Esch and L J Farms Partnership. *See* Compl. ¶ 22. Dennis and Patrick Esch have settled and released their claims against the Government. *Id.*

[3] The Commodity Credit Corporation is authorized by 15 U.S.C. § 714 "[f]or the purpose of stabilizing, supporting, and protecting farm income and prices, of assisting in the maintenance of balanced and adequate supplies of agriculture commodities . . . and of facilitating the orderly distribution of agricultural commodities." 15 U.S.C. § 714. The CCC is subject to "the general supervision and direction of the Secretary of Agriculture." *Id.*

[4] The Conservation Reserve Program is authorized by 7 C.F.R § 1410. Under the CRP, "CCC will enter into contracts with eligible participants to convert eligible land to a conserving use during the contract period in return for financial and technical assistance." 7 C.F.R. § 1410.3(a).

Thereafter, the United States District Court for the District of Columbia remanded *Lyng* to the USDA. *See Lyng*, 665 F.Supp. at 23. The Government appealed the District Court's decision to the United States Court of Appeals for the District of Columbia Circuit which determined, on May 25, 1989, that the District Court "erred in making the substantive decision on benefits for 1987 . . . .[because] it cannot be said that the Department must inexorably conclude the appellees were a nine-person farm during 1987." *Yeutter*, 876 F.2d at 993.[5] Accordingly, the United States Court of Appeals for the D.C. Circuit "modif[ied] the [District Court's] injunction to provide that the Department must redetermine appellees' person status for 1987 as well as subsequent periods" and remanded the case to the USDA. *Id*.

In April of 1990, L J Farms Partnership was dissolved and a new partnership involving the Esch family, Horsecreek Farms, purchased the land pledged as security for the 1984 loan. *See* Pl. Resp. at 7. On August 28, 1990, L J Farms Partnership and the USDA reached a settlement of the claims adjudicated in *Lyng* and *Yeutter* ("Settlement Agreement"). *See* Compl. Ex. A. According to the terms of the Settlement Agreement, L J Farms Partnership would receive $1,087,819.40 for the crop years 1984–1989 ("Settlement Proceeds"). *Id*. at 6. The Settlement Agreement included a release: "This agreement is intended as, and is, a full resolution of that controversy for those programs for all crop years 1984–1989 and all claims between the parties for those crop years concerning the USDA annual commodity support programs and the CRP." *Id*. at 1.

On October 31, 1990, the FmHA decided to accelerate payments on the 1984 farm loans, but afforded borrowers the opportunity to buy out their loans at the "net recovery value."[6] *See Veneman*, No. 00-M-957, slip op. at 3. In calculating Plaintiffs' net recovery value on the 1984 loan, the FmHA included the Settlement Proceeds as profits[7] for crop years 1984–1989. *Id*. Plaintiffs appealed this decision to the National Appeals Division of the USDA ("NAD"), which determined "that the [S]ettlement [P]roceeds represented back rental payments within the scope of the FmHA's lien." *Id*.

---

[5] The named defendant in the appeal was Yeutter, who replaced Lyng in 1989 as the United States Secretary of Agriculture.

[6] The net recovery value is "[t]he market value of the security property assuming that it will be acquired by the lender, and sold for its highest and best use[.] " 7 C.F.R. § 762.102 (2005).

[7]According to the July 10, 1984 Deed of Trust, "Borrower does hereby grant, bargain, sell and assign . . . together with all rights, interest, easements, hereditament and appurtenances thereunto belonging, the rents, issues and profits thereof and revenues and income therefrom to the [FmHA] . . . ." Compl. Ex. B at 1. "Rents, issues and profits" constitute income generated from the land, such as money paid for leases or income generated from crops. *See* 59 C.J.S. *Mortgages* § 300 (2007). The mortgagee (lender) generally does not have a lien on profits from the land unless the Deed of Trust specifically grants the right. *See* RESTATEMENT (THIRD) OF PROPERTY - MORTGAGES § 4.2 (1997). Where "rents, issues and profits" have been pledged as security, however, the mortgagee has the right to collect them to pay any deficiency in the event of foreclosure. *Id*.

On February 1, 1993, Plaintiffs again were notified that the FmHA decided to accelerate all payments due on the $835,000, 1984 loan. *Id.*; *see also* Pl. Resp. at 7–8.

On July 10, 1996, Horsecreek Farms entered into a Production Flexibility Contract ("PFC") with the USDA, to receive subsidies for producing specific crops. *See* Compl. ¶ 24; *see also Esch I*, 49 Fed. Cl. at 633. Plaintiffs received payments thereunder until September 20, 1996, when the Farm Service Administration ("FSA," formerly the FmHA) notified Plaintiffs that their payments would be withheld to offset a "conversion of security claim." Compl. Ex. B at 1. According to the USDA's September 20, 1996 letter, "[t]he claim results from conversion of security property arising from the $1,068,931.65 of payment [Plaintiffs] received from the [S]ettlement [A]greement with the Commodity Credit Corporation, USDA dated August 30, 1990." *Id.* Again, the Government asserted that the Settlement Proceeds were within the scope of the lien, as profits from the secured land for the crop years 1984–1989. *Id.*

On January 17, 1997, a NAD hearing officer decided that the FSA's offset notices were improper because the debtors did not receive proper notice and, "there was no evidence that Horse Creek [sic] Farms and its partners had assumed the indebtedness to FmHA and because the proceeds from the settlement agreement had properly been used to satisfy secured creditors with a higher priority than FmHA." *Veneman*, No. 00-M-957, slip op. at 4. The FSA appealed. *Id.* On August 28, 1997, the NAD reversed, determining that the FSA had a lien on the Settlement Proceeds, because Plaintiffs were in privity with Dennis Esch, Patrick Esch, and their wives, who signed promissory notes for the 1984 loan. *Id.* The NAD also determined that the foreclosure proceedings did not extinguish FmHA's liens on Plaintiffs' property. *Id.* On March 20, 1998, Plaintiffs[8] filed suit in the United States District Court for the District of Columbia for review of the NAD's decision to allow the USDA to offset payments. *Id.* at 1. After the parties submitted cross motions for summary judgment, on May 9, 2000, the case was transferred to the United States District Court for the District of Colorado. *Id.* On July 16, 2004, the United States District Court of Colorado affirmed the decision of the NAD. *Id.* at 8.

## II. PROCEDURAL HISTORY.

### A. Prior Case Filed In The United States Court of Federal Claims.

On August 31, 2000, Plaintiffs filed a Complaint in the United States Court of Federal Claims, alleging that the Government breached the August 28, 1990 Settlement Agreement by withholding PFC farm subsidy payments to offset debt, allegedly owed by Plaintiffs to the FSA on the 1984 farm loan. *See Esch I,* 49 Fed. Cl. at 631. On February 13, 2001, the Government filed a motion to dismiss for lack of subject matter jurisdiction, arguing that Plaintiffs' pending action in the United States District Court for the District of Colorado precluded the United States Court of Federal Claims from exercising jurisdiction, pursuant to 28 U.S.C. § 1500. *Id.* (citing 28 U.S.C. §

[8] Plaintiffs in *Esch* v. *Veneman* are the same Plaintiffs as the current action with the exception of Timothy Esch.

1500 (2000) ("The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States[.]")). Relying on *Loveladies Harbor, Inc.* v. *United States*, 27 F.3d 1545 (Fed. Cir. 1994), the United States Court of Federal Claims held that the court had jurisdiction under § 1500, because Plaintiffs were requesting different relief than in the District of Colorado action. *Esch I*, 49 Fed. Cl. at 634 ("When either the operative facts alleged or the *relief requested is different*, 28 U.S.C. § 1500 does not apply, and the Court of Federal Claims has jurisdiction." (citing *Loveladies Harbor*, 27 F.3d at 1550 (emphasis added))).

The United States Court of Federal Claims also treated the Government's motion to dismiss as a motion to dismiss for failure to state a claim, because the Government challenged the claims on the merits. *Id*. at 633. The United States Court of Federal Claims determined that: "[u]nder Paragraph 24 [of the Settlement Agreement], [P]laintiffs have waived all claims against the government, except a claim brought to *enforce the contract*." *Id*. at 634 (emphasis added). Accordingly, the court dismissed Plaintiff's breach of contract claim for failure to state a cognizable claim under the Settlement Agreement. *Id*. at 635. On August 28, 2001, Plaintiffs filed an appeal in the United States Court of Appeals for the Federal Circuit that voluntarily was dismissed by Plaintiffs on December 5, 2001. *See Esch II*, 25 F. App'x at 942.

### B. This Case.

On September 18, 2006, Plaintiffs filed a Complaint in the United States Court of Federal Claims, alleging that the Government breached the Settlement Agreement by withholding payments due Plaintiffs under the PFC agreement. *See* Compl. ¶ 31. Specifically, the Complaint alleges that the offset payments represent the Government's asserted liability against Plaintiffs for crop years 1984–1989 and the Government's actions are contrary to the terms of the Settlement Agreement which "is intended as, and is, a full resolution of that controversy for those programs for all crop years 1984 through 1989 and all claims between the parties for those crop years." Compl. ¶ 29, 31; *see also* Compl. Ex. A at 1. The Complaint seeks damages of: $843,293.30 for the offset payments; $125,000 for costs associated with destroying crops on CRP program land; $796,250 for the destroyed wheat crop; $1,200,000 for past due and compromised CRP payments; $3,150,000 for CRP payments that were suspended, based on the terms of the Settlement Agreement; and attorneys fees and costs. *Id*. ¶¶ 39–44.

On February 1, 2007, the Government filed a Motion to Dismiss. *See* RCFC 12(b)(1), (6). On May 7, 2007, Plaintiffs filed a Response. On July 9, 2007, the Government filed a Reply.

## III. DISCUSSION.

### A. Jurisdiction.

The jurisdiction of the United States Court of Federal Claims is established by the Tucker Act. *See* 28 U.S.C. §1491. The Act grants the court "jurisdiction to render judgment upon any claim

against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." *Id*. The Tucker Act, however, is merely "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages . . . the Act merely confers jurisdiction upon it whenever the substantive right exists." *United States* v. *Testan*, 424 U.S. 392, 398 (1976). Therefore, in order to pursue a substantive right within the jurisdictional reach of the Tucker Act, a plaintiff must identify and plead an independent contractual relationship, Constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages. *See Todd* v. *United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act[.]"); *see also Fisher* v. *United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc) ("The Tucker Act does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages. In the parlance of Tucker Act cases, that source must be 'money-mandating.'" (citations omitted)).

Moreover, "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501 (2006); *see also John R. Sand & Gravel Co.* v. *United States*, 457 F.3d 1345, 1354 (Fed. Cir. 2006) ("The six year statute of limitations set forth in section 2501 is a jurisdictional requirement for a suit in the Court of Federal Claims[ ]" and "sets forth a condition that must be met for a waiver of sovereign immunity in a suit for money damages against the United States. . . . Due to the jurisdictional nature of section 2501 it may not be waived.").

### B. Standard For Decision On A RCFC 12(b)(1) Motion To Dismiss.

A challenge to the "court's general power to adjudicate in specific areas of substantive law . . . is properly raised by a [Rule] 12(b)(1) motion." *Palmer* v. *United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) ("Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter [.]").

When considering whether to dismiss an action for lack of subject matter jurisdiction, the court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke* v. *United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). Nonetheless, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds* v. *Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question, it [is] incumbent upon [plaintiff] to come forward with evidence establishing the court's jurisdiction.").

**C. Standard For Decision On A RCFC 12(b)(6) Motion To Dismiss.**

While a complaint "attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.* v. *Twombly*, 127 S. Ct. 1955, 1965 (2007) (citations omitted). In order to survive a motion to dismiss, the court "do[es] not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. *Id.*; *see also* RCFC 12(b)(6) ("Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted[.]").

When reviewing a motion to dismiss for failure to state a claim upon which relief may be granted, the court "must accept as true all the factual allegations in the complaint, and . . . indulge all reasonable inferences in favor of the non-movant." *Sommers Oil Co.* v. *United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001) (citations omitted).

**D. The Government's February 1, 2007 Motion To Dismiss.**

**1. Statute of Limitations, 28 U.S.C. § 2501.**

**a. The Parties' Arguments.**

The Government asserts that the United States Court of Federal Claims does not have jurisdiction, because Plaintiffs' claims accrued in 1999 and are barred by the six year statute of limitations. *See* Gov't Mot. (citing 28 U.S.C. § 2501). The Government argues that the latest possible date that the claims could have accrued was when the last offset occurred, on November 3, 1999, more than six years before the Complaint was filed. *Id*. at 7. In addition, Plaintiffs filed a "nearly identical" Complaint in *Esch I* on August 31, 2000, more than six years before the present Complaint was filed. *Id*.

Plaintiffs counter that the application of the statute of limitations is not jurisdictional, because the United States Supreme Court, in *Irwin* v. *Dep't. of Veterans Affairs*, 498 U.S. 89 (1990), held that statutes of limitations apply to the Government in the same way they apply to private parties and therefore are not jurisdictional. *See* Pl. Resp. at 16. Moreover, Plaintiffs rely on *Bolduc* v. *United States,* 72 Fed. Cl. 187 (2006), where the United States Court of Federal Claims followed a line of cases from the United States Court of Appeals for the Federal Circuit holding that the running of the

statute of limitations is more appropriately viewed as a failure to state a claim.[9] *See* Pl. Resp. at 17–18. Accordingly, Plaintiffs argue that the Government bears the burden of proving that the claims in this case should be dismissed for failure to state a claim due to the running of the statute of limitations, under RCFC 12(b)(6). *Id.* at 19. Moreover, Plaintiffs argue that, because the statute of limitations is not jurisdictional, the defense can be waived or forfeited by the Government. *Id.* at 16. In this case, Plaintiffs assert that the Government waived the statute of limitations as an affirmative defense, presumably by not raising it early enough in the proceedings. *Id.* (citing *Day* v. *McDonough*, 126 S. Ct. 1675, 1679 (2006) ("Ordinarily in civil litigation, a statutory time limitation is forfeited if not raised in a defendant's answer or in an amendment thereto.")).

Plaintiffs further contend that even if the six year statute of limitations bars the asserted claims, the court should apply the doctrine of equitable tolling. *See* Pl. Resp. at 19. Plaintiffs analogize the present case to the situation in *George F. Miller Farms* v. *United States*, 27 Fed. Cl. 672 (1993), where the plaintiffs timely filed motion was "suspended" pending the outcome of a United States District Court action pursuant to 28 U.S.C. § 1500, and then was voluntarily dismissed. *See* Pl. Resp. at 20 (citing *Miller Farms*, 27 Fed. Cl. at 672). In *Miller Farms*, Plaintiffs filed a second action for the same substantive claim after the six year statute of limitations expired and the Government moved to dismiss. 27 Fed Cl. at 672–73. Nevertheless, the United States Court of Federal Claims applied the doctrine of equitable tolling, because the plaintiffs "did everything possible to preserve their claims and . . . defendants suffer[ed] no prejudice." *Id.* at 676.

---

[9] In *Bolduc,* the United States Court of Federal Claims determined that a motion to dismiss, based on the running of the § 2501 statute of limitations, properly is raised under RCFC 12(b)(6):

> [T]he Federal Circuit has, on several occasions, expressly gone out of its way to emphasize that the running of the statute of limitations is properly a failure to state a claim upon which relief may be granted, and not a lack of subject-matter jurisdiction. *See Venture Coal Sales Co.* v. *United States*, 370 F.3d 1102, 1105 n.2 (Fed. Cir. 2004) (explaining that when a party "failed to make its claim within the required limitations period-that is not a question of subject matter jurisdiction of the court"); *Ariadne Fin. Services Pty. Ltd.* v. *United States*, 133 F.3d 874, 878 (Fed. Cir. 1998) (determining that the "statutory language" of 28 U.S.C. § 2501 "confirms that the question of a time bar on [plaintiff's] claim does not affect the subject matter jurisdiction of the Court of Federal Claims," but instead may "bar its eligibility to invoke that jurisdiction"); *Borough of Alpine*, 923 F.2d at 171–72 & n.1 (explaining that the dismissal of an untimely complaint should have been "for failure to state a claim on which relief may be granted," as our Court "has and will continue to have jurisdiction over the subject matter," but the failure to timely file meant plaintiff "was not entitled to have the Claims Court exercise its subject matter jurisdiction").

72 Fed. Cl. at 191.

**b. The Court's Resolution.**

**I. The Statute of Limitations Bars Plaintiff's Claims In This Case.**

In *John R. Sand & Gravel Co.*, the United States Court of Appeals for the Federal Circuit held: "we are unwilling to disturb the well-settled law that section 2501 creates a jurisdictional condition precedent for suit in the United States Court of Federal Claims, which may not be waived by the parties." *John R. Sand & Gravel Co.*, 457 F.3d at 1355; *but see* 457 F.3d at 1355-65 (Newman, J., dissenting) (arguing that § 2501 is not a jurisdictional prerequisite, but "an unexceptional statute of limitations that is interpreted like any other statute of limitations." *Id*. at 1362). [10]

Plaintiffs' August 31, 2000 Complaint in *Esch I* is almost identical to the September 18, 2006 Complaint in this case, evidencing that Plaintiffs' claims accrued on or before August 31, 2000. *See* DX 3; s*ee also Brown Park Estates-Fairfield Dev. Co.* v. *United States*, 127 F.3d 1449, 1455 (Fed. Cir. 1997) (A claim accrues "'when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action.'" (quoting *Brighton Village Assocs*. v. *United States*, 52 F.3d 1056, 1060 (Fed. Cir. 1995))). Therefore, the September 18, 2006 Complaint was filed more than six years after the claims accrued and the statute of limitations had run. *See* 28 U.S.C. § 2501. Accordingly, in this case, Plaintiffs' claims are barred, unless the doctrine of equitable tolling applies. *Id*.

**ii. The Court Discerns No Grounds For Equitably Tolling The Statute of Limitations In This Case.**

The United States Supreme Court has held that "making the rule of equitable tolling applicable to suits against the Government, in the same way that it is applicable to private suits, amounts to little, if any, broadening of the congressional waiver." *Irwin* v. *Dep't. of Veterans Affairs*, 498 U.S. 89, 95 (1990). The United States Supreme Court has further made clear that equitable tolling may be applied in suits against the Government "[w]hen application . . . is consistent with *Congress' intent* in enacting a particular statutory scheme[.]" *Bowen* v. *City of New York*, 476 U.S. 467, 479 (1986) (emphasis added); *see e.g.*, *United States* v. *Brockamp*, 519 U.S. 347, 351 (1997) ("Section 6511's detail, its technical language, the iteration of the limitations in both procedural and substantive forms, and the explicit listing of exceptions, taken together, indicate to us that Congress did not intend courts to read other unmentioned, open-ended, 'equitable' exceptions into the statute that it wrote.").[11] In *Martinez* v. *United States*, 333 F.3d 1295 (Fed. Cir. 2003) (en

---

[10] On May 29, 2007, the United States Supreme Court granted certiorari in *John R. Sand & Gravel Co*. *See* 127 S. Ct. 2877 (2007).

[11] Since *Irwin*, the United States Supreme Court has considered several cases in which the central issue was whether statutes of limitations could be equitably tolled in suits against the Government. *See e.g., United States* v. *Beggerly*, 524 U.S. 38, 48-49 (1998) ("Equitable tolling is

banc), the United States Court of Appeals for the Federal Circuit "decline[d] to decide whether equitable tolling is generally available under section 2501[.]" 333 F.3d at 1318. Recently, however, in *Kirkendall* v. *United States,* 479 F.3d 830 (Fed. Cir. 2007), the United States Court of Appeals for the Federal Circuit established a two part test to determine if equitable tolling is available in suits against the government: 1) "whether [equitable] tolling is available in a sufficiently analogous private suit" and 2) "whether Congress expressed a clear intent that equitable tolling not apply." 479 F.3d at 837 (holding equitable tolling applies to the timing provisions of the Veterans Employment Opportunities Act, 5 U.S.C.A. § 3330a).[12]

If equitable tolling is available under a particular statute, the United States Supreme Court has held that a litigant "bears the burden of establishing two elements: 1) that he has been pursuing his rights diligently, and 2) that some extraordinary circumstance stood in his way." *Pace* v. *DiGuglielmo*, 544 U.S. 408, 418 (2005); *see also Wallace* v. *Kato*, 127 S. Ct. 1091, 1100 (2007) ("Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs."); *Irwin*, 498 U.S. at 96 ("We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.").

Assuming *arguendo* that equitable tolling is available under § 2501, the requirements of equitable tolling are not met in this case. Plaintiffs argue that the court should equitably toll the statute of limitations in this case, because the jurisdictional defect from their prior suit in the United States Court of Federal Claims has been cured. *See* Pl. Resp. at 21–22. In *Esch I*, however, the United States Court of Federal Claims determined that the court had jurisdiction, pursuant to 28

---

not permissible where it is inconsistent with the text of the relevant statute. . . . Given [that the statute of limitations will not begin to run until the plaintiff knew or should have known of the claim], and the unusually generous nature of the [Quiet Title Act's] limitations time period, extension of the statutory period by additional equitable tolling would be unwarranted."); *see also Lampf* v. *Gilbertson*, 501 U.S. 350, 363 (1991) ("[T]he equitable tolling doctrine is fundamentally inconsistent with the 1-and-3-year structure [of the Securities Exchange Act and Securities Act].").

[12] The United States Court of Appeals for the Federal Circuit has also addressed whether other statutes of limitations can be equitably tolled in suits against the Government. *See Oja* v. *Dep't of Army*, 405 F.3d 1349 (Fed. Cir. 2005) (equitable tolling does not apply to judicial review of Merit Systems Protection Board decisions under 5 U.S.C. § 7703(b)(1)); *Jaquay* v. *Principi*, 304 F.3d 1276, 1286 (Fed. Cir. 2002) (en banc) (equitable tolling applies for filing an appeal with the Court of Appeals for Veterans Claims under 38 U.S.C. § 7266(a)(1)); *Bailey* v. *West*, 160 F.3d 1360, 1362–68 (Fed. Cir. 1998) (en banc) (equitable tolling applies to the time limit for appealing decisions of the Board of Veterans' Appeals under 38 U.S.C. § 7266(a)); *Brice* v. *Sec'y of Health and Human Servs*., 240 F.3d 1367, 1372 (Fed. Cir. 2001) (equitable tolling does not apply in compensation actions under the National Childhood Vaccine Injury Act); *RHI Holdings, Inc.* v. *United States*, 142 F.3d 1459, 1461–63 (Fed. Cir. 1998) (equitable tolling does not apply in tax refund cases under 26 U.S.C. § 6532(a)(3)).

U.S.C. § 1500, but Plaintiffs failed to state a claim upon which relief may be granted. *See Esch I*, 49 Fed. Cl. at 631. A failure to state a claim is a judgment on the merits. *See Bell* v. *Hood*, 327 U.S. 678, 681 (1946) ("For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits . . . ."). Moreover, in *Esch I,* Plaintiffs voluntarily dismissed their appeal. *See Esch I*, 49 Fed. Cl. at 634; *Esch II*, 25 F. App'x at 942. Therefore, Plaintiffs were not prevented from pursuing judicial remedies. *See Irwin*, 498 U.S. at 96. Accordingly, the court discerns no grounds for tolling the statute of limitations in this case, and therefore does not reach the issue of whether the doctrine even applies to § 2501. For the aforementioned reasons, Plaintiffs' September 18, 2006 Complaint is dismissed for lack of subject matter jurisdiction. *See* RCFC 12(b)(1).

**2. Res Judicata.**

**a. The Parties' Arguments.**

In the alternative, the Government argues that res judicata bars Plaintiffs' present action, because *Esch I* involved the same plaintiffs, included the same transactional facts, and was adjudged on the merits. *See* Gov't Mot. at 6. Plaintiffs do not dispute that the plaintiffs and transactional facts of the two actions are the same. *See* Pl. Resp. at 11. Instead, Plaintiffs contend that *Esch I* did not constitute a final judgment on the merits, because the *Esch I* court determined that it did not have subject matter jurisdiction, and therefore did not have authority to reach the merits of the suit. *Id*. Accordingly, Plaintiffs reason that, because "'the second-filed claim contains new information which cures the jurisdictional defect fatal to the first-filed suit, then the second filed suit presents a different jurisdictional issue and res judicata cannot apply.'" *Id*. at 13 (quoting *Goad* v. *United States*, 46 Fed. Cl. 395, 398 (2000) (holding the suit was barred by res judicata partly because the first action was dismissed for failure to state a claim and not lack of jurisdiction as the plaintiff contended)).

**b. The Court's Resolution.**

**I. Relevant Precedent Regarding Res Judicata.**

Under the doctrine of res judicata, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dept. Stores, Inc.* v. *Moitie*, 452 U.S. 394, 398 (1981). The purpose of res judicata is to ensure "that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties." *Id*. at 401 (quoting *Baldwin* v. *Traveling Men's Ass'n*, 283 U.S. 522, 525 (1931)). Res judicata applies when (1) the parties are identical or in privity; (2) the first suit proceeded to a final judgment on the merits; and (3) the second claim is based on the same set of transactional facts as the first. *Parklane Hosiery Co.* v. *Shore*, 439 U.S. 322, 326 n.5 (1979); *see also Ammex, Inc.* v. *United States*, 334 F.3d 1052, 1055 (Fed. Cir. 2003). A motion to dismiss for failure to state a claim is a judgment on the merits for the purposes of res judicata. *See Federated Dept. Stores, Inc.*, 452 U.S. at 399 n.3.

#### ii. Plaintiffs' Claims Are Barred By The Doctrine Of Res Judicata.

The United States Court of Federal Claims held in *Esch I* that Plaintiffs' complaint was dismissed for failure to state a claim, which was a judgment on the merits. *See Esch I* 49 Fed. Cl. at 631; *see also Federated Dept. Stores, Inc.*, 452 U.S. at 399 n.3. Because *Esch I* involved identical plaintiffs and the same transactional facts as the present action, as well as a judgment on the merits, Plaintiffs' claims in this case are barred by res judicata. *See Parklane Hosiery Co.*, 439 U.S. at 326 n.5.[13] Accordingly, in the alterative, Plaintiffs' Complaint is dismissed for failure to state a claim upon which relief may be granted. *See* RCFC 12(b)(6).

## IV. CONCLUSION.

For the aforementioned reasons, the Government's February 1, 2007 Motion to Dismiss the Complaint is granted. The Clerk of the Court is ordered to enter judgment for the Government.

**IT IS SO ORDERED.**

s/Susan Braden
**SUSAN G. BRADEN**
**Judge**

---

[13] The Government also contends that res judicata bars Plaintiffs' claims, because the *Veneman* case in the United States District Court of Colorado: had identical plaintiffs; was adjudged on the merits; and included the same transactional facts. Gov't Reply at 4 (citing *U.N.R. Industries, Inc.*, 962 F.2d 1013, 1021 (Fed. Cir. 1992) ("[I]f the same claim has been finally disposed of by another court before the complaint is filed in the Claims Court, ordinary rules of res judicata . . . apply.")). The court, however, need not reach this issue, because it has determined that Plaintiffs' claims are barred by res judicata based on *Esch I*.